## HOFFMAN et al. v. STONE et al.

A ditch company, who avail themselves of a dry ravine to conduct their water a portion of the distance to their dam, where they use it, do not abandon the water thus carried by them, and are entitled to the same enjoyment of it as if conducted through an artificial ditch.

The natural water in such ravine belongs to the first appropriator thereof, and for either a diversion or appropriation thereof, an action will lie.

APPEAL from the District Court of the Eleventh Judicial District, County of El Dorado.

This was an action brought by the owners of a ditch, (which received its supply of water from Dutch Creek, or Ravine, near its mouth,) in El Dorado county, for the purpose of procuring a perpetual injunction against the defendants, restraining them

from diverting or appropriating the waters of the said ravine, and also for the recovery of a small judgment against them, by way of damages. The defence was that Dutch Ravine was usually a dry creek, affording no natural water during the summer months, and that the defendants, in order to connect two of their canals, had precipitated the water from the upper one into the creek, and taken the same out again, by means of a dam, into their lower ditch, and that they had not interfered with the natural water of said ravine. The case was tried by a jury, who found a special verdict, on which the Court granted a perpetual injunction against the defendants, restraining them from diverting water from the main channel of Dutch Creek, so as to prevent the same from flowing down said creek to the extent of the capacity of plaintiffs' ditch. Defendants appealed.

*Sanderson & Hewes* for Appellants.

The defendants diverted no more water from said Dutch Creek than they turned into it from their canal.

Dutch Creek is merely a torrent, and affords natural water only during the rainy season, and in quantities varying with the amount of rain which falls.

A party who appropriates water for mining purposes acquires greater rights therein than are recognized by the common law in riparian proprietors; that is, the right which ditch companies acquire in their water is something more than a mere use, and approaches nearer to an absolute ownership. See Irwin *v.* Phillips, Jan. T., 1855; Gill *v.* Newman, Oct. T., 1855.

He acquires and possesses all the characteristics of ownership; he can divert, change and control at pleasure its course; may sell or refuse to sell it; in short, he may exercise every act of ownership over it which its nature and character will permit.

Abandonment is the result of act coupled with intention, and when used in a legal sense, means a voluntary parting with property, or rights, without the intention of resuming or reclaiming them.

It is difficult to perceive in what manner the plaintiffs have been injured by the acts of the defendants. They have been deprived of no water to which they had ever, at any time, acquired any right.

To say that they have a right to have the waters of Pilot and Rock Creeks flow down the channel of Dutch Creek to their works, is to say they have the right to avail themselves of the fruits of the capital and labor of the defendants, without compensation, and against their will and consent—a doctrine too monstrous and absurd to be sanctioned by judicial authority.

*Newell & Williams* for Respondents.

In Eddy *v.* Simpson, we understand the facts to be substantially these:

That the plaintiffs had erected a dam across Shady Creek, and thereby diverted the waters of the same into a ditch constructed by them; and afterwards defendants, through their ditches, brought the waters of Grizzly Cañon and Bloody Run to Cherokee Corral, in the vicinity of Shady Creek, and sold it to miners; that after being used by the miners, said water, through natural channels, etc., found its way into Shady Creek, above plaintiffs' dam, defendants claiming to have never abandoned it; that defendants, for the purpose, (as they said,) of reclaiming or taking up the same water, or same quantity which they had turned into, or permitted to run into Shady Creek, constructed the dam complained of.

The defence, in the case just quoted, was substantially the same urged in the case before us.

When a party, who is in the use of certain water, permits the same to escape from the possession, and enter a natural stream, where it does, or may mingle with the waters of said stream, he abandons the same, whether intending reclaiming it or not, and so far as the water is concerned which has so passed into the natural stream, he places himself upon an equality with all others having a right to appropriate the same by building other dams and ditches, unless, by so doing, he interferes with the vested rights of some one below him.

We maintain two propositions, upon which we submit the merits of this case, to wit:

1. That when appellants permitted the water which had been in their ditches to escape into Dutch Creek, they lost all right thereto, and all control of the same.

2. That the respondents, being the first to appropriate the water of Dutch Creek, are entitled to the undisturbed use of the same, to the extent of the capacity of their ditch, regardless of the source from whence it came.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

The former decisions of this Court, in cases involving the right of parties to appropriate waters for mining and other purposes, have been based upon the wants of the community and the peculiar condition of things in this state, (for which there is no precedent,) rather than any absolute rule of law governing such cases.

The absence of legislation on this subject, has devolved on the Courts the necessity of framing rules for the protection of this great interest, and in determining these questions, we have conformed, as nearly as possible, to the analogies of the common law.

The fact early manifested itself, that the mines could not be successfully worked without a proprietorship in waters, and it was recognized and maintained. To protect those who, by their energy, industry, and capital, had constructed canals and races, carrying water for miles into parts of the country which must have otherwise remained unfruitful and undeveloped, it was held that the first appropriator acquired a special property in the waters thus appropriated, and as a necessary consequence of such property, might invoke all legal remedies for its enjoyment or defence. A party appropriating water, has the sole and exclusive right to use the same for the purposes for which it was appropriated, and so long as he is not obstructed in the use thereof, he has no ground of action.

In the case before us, it is shown that Dutch Gulch was a mere torrent, dry at certain seasons of the year; that it was used by the defendants, as a part of their ditch, for conducting water from another stream down to their dam; that, in point of fact, the water so brought to Dutch Gulch, and turned in there by defendants, was not abandoned by them, but was turned in for the purpose of being conveyed to their dam, from whence it was afterwards diverted and sold by them; that there was, at the time of the commencement of this suit, no natural water flowing in the bed of the stream, and that all the waters so diverted by the defendants were artificial, or waters conducted there by them.

The plaintiffs being the prior locators, it would follow that any interference with the waters of Dutch Gulch would be an infraction of their rights. But the appropriation of the waters did not give them the exclusive use of the bed of the stream. We see no reason why it might not be used by others, as a channel for conducting water, so long as it did not interfere with their rights. If the defendants were diverting the natural water of the stream, as well as that brought into it by themselves, then the plaintiff would have a just cause of complaint.

It would be a harsh rule, however, to require those engaged in these enterprises to construct an actual ditch along the whole route through which the waters were carried, and to refuse them the economy that nature occasionally afforded in the shape of a dry ravine, gulch, or cañon. It is contended, however, that this case falls within the rule of Eddy et al. v. Simpson et al., 3 Cal. Rep.; and Kelly & Co., v. Natoma Water Company, Jan. T., 1856. We do not think so. The verdict of the jury finds, that the water was not abandoned by the defendants, and left to find its way by natural channels into Dutch Gulch, but was turned in by the defendants making the gulch a connecting link of their ditch.

Under all the circumstances of the case, we do not see how the plaintiff is entitled to relief. It may very possibly happen, that at certain seasons of the year, the defendants' dam will obstruct the water running in the natural channel of the stream which,

of right, belongs to the plaintiffs, and in that event, they would have their action. But at the date of the commencement of this suit, no such state of facts is shown to exist, and the plaintiffs are not entitled to any relief.

Judgment reversed.