## HOOKER v. LOS ANGELES.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 149.  Argued January 23, 1903.—Decided February 23, 1903.

Where the controversy in the state court does not involve the construction of the treaty of 1848 with Mexico, but only the validity of the title of certain Mexican and Spanish grants made prior to the treaty, no Federal question is involved.

The Fourteenth Amendment does not control the power of a State to determine the form of procedure by which legal rights may be ascertained, if the method adopted gives reasonable notice and affords a fair opportunity to be heard.

Where the validity, on account of repugnancy to the Federal Constitution, of statutes of California as to the paramount right of the City of Los Angeles to the surface and subterranean waters of the Los Angeles River is not drawn in question in the trial or in the Supreme Court of the State, the decisions of the state courts will not be reviewed in this court.

THIS is a writ of error to the Supreme Court of the State of California to review a judgment of that court affirming the judgment of the Superior Court of the county of Los Angeles, California, in favor of the city of Los Angeles, and against Hooker and Pomeroy. The city brought suit against Hooker and Pomeroy, to condemn all their " estate, right, title, and interest," in and to certain tracts of land, described in the complaint, for the purpose of enabling the city " to construct and maintain thereon the ' headworks' of its projected system for supplying water to its inhabitants for private and municipal purposes." All questions except the amount of compensation to be awarded were by stipulation tried by the court. The jury returned a verdict awarding $23,000 as the value " of an estate in fee simple in the lands described in the complaint, including all their elements of value, subject to the paramount right of the city of Los Angeles to take from the Los Angeles River, from time to time, all the water that may be needed at such time for the use of the inhabitants of said city, and for all municipal and public uses and purposes therein," and $2000 as damages to the re-

maining portion of the tract of which that land formed a part. Judgment was rendered thereon for the amount so found, and costs. The case was carried to the Supreme Court, and the judgment affirmed. 124 California, 597.

*Mr. J. S. Chapman* for plaintiff in error. *Mr. John Garber, Mr. R. H. F. Variel* and *Mr. J. G. North* were on the brief.

*Mr. John F. Dillon* and *Mr. J. R. Scott* for defendant in error. *Mr. Henry T. Lee, Mr. Harry Hubbard* and *Mr. John M. Dillon* were on the brief.

Mr. Chief Justice Fuller, after making the foregoing statement, delivered the opinion of the court.

We cannot find in the pleadings or other proceedings in the trial court, or in the Supreme Court, that any statute of California was asserted to be in conflict with the Constitution, or any law or treaty of the United States, or that any right was claimed by plaintiffs in error under the Constitution, or any treaty or statute of the United States.

The city alleged in its complaint that the Los Angeles River was a non-navigable stream, rising a few miles to the north and northwest of the city, and fed by streams rising to the surface in or near the bed of the river; that that bed was composed of sandy soil, into which the water sank and formed subterranean streams flowing beneath the bed and then rising to the surface; that the river flowed through the land sought to be condemned before reaching the city; that the city was the owner of the exclusive right to the use of all the water of the river in trust for the public purposes of supplying the inhabitants of the city with water for domestic use, supplying water for the irrigation of land embraced within the pueblo lands of the city, and other municipal uses; that plaintiffs in error were owners of the fee simple of the lands described, subject to the rights of the city to the water of the river; and the prayer was for the condemnation in fee simple of all the estate, right, title and interest of plaintiffs in error in the land.

The answer of plaintiffs in error denied that the river was fed by springs rising to the surface in or adjoining the bed of the river; admitted that the bed was composed of sandy soil, but denied that the waters of the river formed well-defined subterranean streams flowing in channels beneath the bed, or that such subterranean waters rose before reaching the city, or became a part of the surface water of the river; and denied that the city was the owner of any right to the use of all the water of the river, in trust, or otherwise; denied that the city had any right in the water or to the use thereof, other than as a riparian owner of lands through which the river flowed, and rights acquired by appropriation; and denied that the city owned the right to the water of the river to the exclusion of plaintiffs in error. On the contrary, the answer alleged that the lands of plaintiffs in error were riparian lands situated far above the north boundary of the city, and that, as riparian owners, plaintiffs in error were entitled to the use of the waters of the river for all lawful purposes, and, to a reasonable extent, for irrigating those lands and for domestic and other uses. And it set up grants of part of the land to the predecessors of plaintiffs in error in 1843 by the governor of both Californias, and of the remainder of the land by grant in 1784; that confirmation was petitioned for before the board of land commissioners appointed under the act of Congress of March 3, 1851, the grants confirmed, and the decrees of the board affirmed by the District Court of the United States for the Southern District of California, and patents duly issued; and averred that plaintiffs in error claimed title "under and through the aforesaid Mexican and Spanish grants, and the proceedings for the confirmation thereof, and the said patents issued by the United States founded thereon;" and that as owners of the land plaintiffs in error were also owners of the waters percolating in the soil thereof, and riparian owners, having the rights of riparian proprietors in the waters of the river.

The trial court decided that the city was, and had been since its organization, owner in fee simple of the paramount use of the waters of the Los Angeles River, so far as might be needed from time to time, for the public purposes of supplying the

inhabitants of the city with water for public and domestic purposes, as described in the complaint; but plaintiffs in error were the owners of the particular land, and had, subject to the rights of the city, the rights of riparian proprietors thereof, and the right to use the water of the river for all purposes for which riparian owners are entitled to use such waters.

The contentions seem to be that the state courts decided against the claim of plaintiffs in error to the rights of a riparian owner, and to the ownership of alleged percolating waters, as derived from patents of the United States as well as from Mexican grants, or under the treaty of Guadeloupe Hidalgo; that the statutes of California in authorizing the trial of title in condemnation proceedings, and the determination of compensation before the determination of title, amounted to providing for the taking of private property for public use without just compensation; that certain statutes declaring the city to be vested with a paramount right to the surface and subterranean waters deprived plaintiffs in error of their property without due process of law; and that the statute of the State in providing that compensation and damages should be deemed to have accrued at the date of the summons, as construed by the state courts, resulted in taking the property of plaintiffs in error without just compensation.

Obviously, the question as to the title or right of plaintiffs in error in the land, and whatever appertained thereto, was one of state law and of general public law, on which the decision of the state court was final. *San Francisco* v. *Scott*, 111 U. S. 768; *Powder Works* v. *Davis*, 151 U. S. 389. And the question of the existence of percolating water was merely a question of fact.

The patents were in the nature of a quit claim, and under the act of March 3, 1851, were "conclusive between the United States and the said claimants only, and shall not affect the interests of third persons." The validity of that act was not drawn in question in the state court, and as the right or title asserted by plaintiffs in error was derived under Mexican and Spanish grants, the decision of the state court on the claims asserted by plaintiffs in error to the waters of the river was not

against any title or right claimed under the Constitution, or
any treaty, or statute of, or commission held, or authority ex-
ercised, under the Constitution.   If the title of plaintiffs in
error were protected by the treaty, still the suit did not arise
thereunder, because the controversy in the state court did not
involve the construction of the treaty, but the validity of the
title of Mexican and Spanish grants prior to the treaty.   *New
Orleans* v. *De Armas*, 9 Pet. 224; *Iowa* v. *Rood*, 187 U. S. 87;
*Phillips* v. *Mound City Association*, 124 U. S. 605.

In *Crystal Springs Land and Water Company* v. *City of Los
Angeles*, 82 Fed. Rep. 114, the Circuit Court ruled that where
both parties claimed under Mexican grants, confirmed and pat-
ented by the United States in accordance with the provisions of
the treaty of Guadeloupe Hidalgo, and the controversy was
only as to what were the rights thus granted and confirmed,
the suit was not one arising under a treaty so as to confer juris-
diction on a Federal court, and that where the only ground of
Federal jurisdiction was the allegation in a bill that defendant's
claim of title was based in part on certain acts of the legislature
of the State, which attempted to transfer to it, as alleged, the
title held by complainant's grantors at the time of their passage,
the court would not retain jurisdiction when an answer was
filed by defendant denying the allegations, and disclaiming any
title or claim of title not held by it before the passage of the
acts.   The bill was dismissed, and we affirmed the judgment.
177 U. S. 169.

The trial court determined for itself, among other questions,
the nature and extent of the city's interest in the waters of the
river, but while it instructed the jury in relation thereto it did
not file its written findings until after the return of the verdict.
And it is argued that the respective rights of the parties were
not in fact adjudicated until after the amount of compensation
had been found, and that in this way plaintiffs in error were
deprived of their property without due process of law.   The
Fourteenth Amendment does not control the power of a State
to determine the form of procedure by which legal rights may
be ascertained, if the method adopted gives reasonable notice
and affords a fair opportunity to be heard.   *Iowa Central R.*

*R. Co.* v. *Iowa*, 160 U. S. 389; *Long Island Water Supply Company* v. *Brooklyn*, 166 U. S. 685.

The construction of a law of a State, that it was competent for the court to try and determine in a condemnation proceeding, an adverse claim of the plaintiff therein to an interest in property sought to be condemned, is conclusive on this court, and we cannot understand how the entry of the verdict of a jury as to the amount of compensation prior to the filing of written findings on the other issues could have the effect of depriving plaintiffs in error of their property without due process of law. The Chief Justice of California well said that it was of no importance in what order the other issues in the case were decided, except in so far as the determination of one point was necessary as a basis for the determination of another, and that if the instructions to the jury actually given were correct, the fact that these findings had not been previously filed was of no consequence.

And so as to certain statutes of the State of California, which declared that the city of Los Angeles is vested with the paramount right to the surface and subterranean water of the Los Angeles River. Those statutes were admitted in evidence merely to show that the city was the successor of the ancient pueblo. The court held that the right of the city of Los Angeles to take from the Los Angeles River all of the waters of the river to the extent of its reasonable domestic and municipal needs was based on the Spanish and Mexican law, and not on the charters of the city of Los Angeles. The validity of the statutes, on account of repugnancy to the Federal Constitution, was not drawn in question in the trial court nor in the Supreme Court of the State, and both courts held that they neither granted to the city nor took away from plaintiffs in error any rights or property.

Section 1249 of the Code of Civil Procedure of California provided that for the purpose of assessing compensation and damages; the right thereto should be taken to have accrued at the time of the summons, "and its actual value at that date, shall be the measure of compensation for all property to be actually taken, and the basis of damages to property not actually taken, but injuriously affected."

The validity of the statute under the state constitution had been repeatedly sustained by the state courts, and those courts held that the value referred to in the statute was the actual value at that date.

Plaintiffs in error asked the court to charge the jury that the date of estimating the value of the property was the date of the summons, and the Supreme Court held that in these circumstances they could not be permitted to attack the condemnation statute as unconstitutional so far as related to the appraising the value of the land as provided.

Moreover, this court cannot reverse the decisions of state courts in regard to questions of general justice and equitable considerations in the taking of property. *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112.

The truth is there is nothing in this record adequately showing that the state courts were led to suppose that any claim under the Constitution of the United States was made by plaintiffs in error, or that any ruling involved a decision against a right set up by them under that instrument.

In *Sayward* v. *Denny*, 158 U. S. 180, after stating the contention of plaintiff in error that the effect of the judgment of the state court was "to deprive him of his property without due process of law, or to deny him the equal protection of the laws, and amounted to a decision adverse to the right, privilege, or immunity of plaintiff in error under the Constitution of being protected from such deprivation or denial," we said: "But it nowhere affirmatively appears from the record that such a right was set up or claimed in the trial court when the demurrer to the complaint was overruled, or evidence admitted or excluded, or instructions given or refused, or in the Supreme Court in disposing of the rulings below. . . . We are not called on to revise these views of the principles of general law considered applicable to the case in hand. It is enough that there is nothing in the record to indicate that the state courts were led to suppose that plaintiff in error claimed protection under the Constitution of the United States from the several rulings, or to suspect that each ruling as made involved a decision against a right specially set up under that instrument. And

we may add that the decisions of state tribunals in respect of matters of general law cannot be reviewed on the theory that the law of the land is violated unless their conclusions are absolutely free from error."

This case comes within the rule there laid down and the writ of error must be

*Dismissed.*

MR. JUSTICE MCKENNA took no part in the decision of this case..