[L. A. No. 2140. In Bank.—December 1, 1909.]

# CITY OF LOS ANGELES, Respondent, v. JESSE D. HUNTER et al., Appellants.

# CITY OF LOS ANGELES, Respondent, v. THOMAS D. BUFFINGTON et al., Appellants.

SUBTERRANEAN WATERS OF SAN FERNANDO VALLEY—NATURAL RESERVOIR OF LOS ANGELES RIVER.—The subterranean waters of the San Fernando Valley are not percolating waters in the common law sense of that term. While they percolate, they do so only in the sense that they form a vast mass of water confined in a basin filled with detritus, always slowly moving downward to the outlet, in the effort, in conformity with physical law, to attain a uniform level. Such waters constitute the great natural reservoir and supply of the Los Angeles River.

ID.—CITY OF LOS ANGELES HAS PARAMOUNT RIGHT TO ALL WATERS OF LOS ANGELES RIVER.—The city of Los Angeles, as the successor of the original pueblo, has the paramount right to the use of all the waters of the Los Angeles River, for legitimate uses either within the limits of the old pueblo or upon annexed territory not within such limits. The enjoyment of such use cannot be curtailed by the abstraction of the subterranean waters of the San Fernando Valley by landowners whose lands overlie such waters.

ID.—ACTION TO ENJOIN ABSTRACTION OF WATER IN SAN FERNANDO VALLEY—PLEADING—QUANTITY OF WATER NECESSARY FOR USE.—In an action by the city of Los Angeles, to enjoin such landowners from abstracting the subterranean waters of San Fernando Valley, in which it claims a paramount right to all the waters of the Los Angeles River, it was not necessary for it to aver in the complaint that any particular quantity of the water was necessary for its use, nor to give the boundaries and locations of the irrigable land for which the water was required.

ID.—FINDING AS TO PARTICULAR QUANTITY REQUIRED DURING CERTAIN SEASON.—In such action, where the court properly decreed that the paramount right to the use of the water was in the city, and restrained the defendants from diverting water from the river at any time when the city was taking the entire surface flow for the purposes for which the city and its inhabitants required the water, it was neither necessary nor practical for the court to attempt to define the amount of water which would be required by the city from October first of each year to May first, of the following year.

ID.—EXPERT TESTIMONY—HYPOTHETICAL QUESTION BASED ON EVIDENCE OF ANOTHER WITNESS.—The basing of a hypothetical question

asked an expert witness, upon the assumption of the truth of the evidence given by another witness whose testimony was heard by him, while not to be commended, is not such an irregularity as to warrant a reversal.

Id.—Geological Expert—Manner of Creation of River.—In such action, the opinions of geological experts, as to the manner in which the Los Angeles River was created, were admissible.

Id.—Quieting Title to Right to Water—Bringing in New Parties—Abatement.—In an action to quiet title to the city's asserted paramount right to the waters of the Los Angeles River, brought against a large number of landowners in San Fernando Valley, it is not error for the court to refuse the defendants' motion to bring in other defendants similarly situated, or to refuse to abate the action until such parties were brought in.

APPEALS from judgments of the Superior Court of Los Angeles County and from orders refusing a new trial. G. A. Gibbs, Judge.

The facts are stated in the opinion of the court.

McNutt & Hannon, Stephens & Stephens, Warren E. Lloyd, T. R. Archer, and Munson & Barclay, for Appellants.

Leslie R. Hewitt, City Attorney, H. T. Lee, J. R. Scott, and W. B. Mathews, for Plaintiff and Respondent.

Tanner, Taft & Odell, for certain Defendants, Respondents.

HENSHAW, J.—The suit of the City of Los Angeles v. Hunter et al. is an action against forty-seven owners of land in the San Fernando Valley, to quiet title in the plaintiff to its asserted paramount right to the use of the waters of the Los Angeles River. The case of the City of Los Angeles v. Buffington et al. is an action against one hundred and sixty owners or tenants of land in the same valley, brought for the same purpose, and also to obtain an injunction restraining the defendants from making any diversion of water from the river when it is required by the city for supplying its municipal and domestic needs. The actions were tried together, and from the judgments which followed in favor of the city the defendants appeal. The legal propositions presented upon all appeals are substantially identical.

Saving certain minor objections going to the introduction or rejection of evidence, the principal contentions of appellants

are: 1. That the waters which they were taking by means of wells were not waters of the Los Angeles River; and, 2. If they were waters of the Los Angeles River, the city of Los Angeles had no superior right to the use of them.

The lands of these defendants, embracing in all about five thousand acres, are situated in the southeastern portion of the San Fernando Valley, where the surrounding mountains draw together and form what is called the "Narrows." A description of the San Fernando Valley, adequate for all the purposes of this consideration, will be found in *City of Los Angeles* v. *Pomeroy*, 124 Cal. 597, [57 Pac. 585]. The cases of *Katz* v. *Walkinshaw*, 141 Cal. 116, [99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766], and *McClintock* v. *Hudson*, 141 Cal. 275, [74 Pac. 849, together with the Pomeroy case above cited, give so full and satisfactory an account of the water conditions existing, not alone generally in the arid portions of this state, but particularly of the conditions existing and controlling the considerations of the questions here presented that a reference to them renders unnecessary any detailed description.

The defendants were using water pumped from wells of various depth, which wells were situated at an average distance of about one thousand feet from the surface border of the Los Angeles River, though in instances the distances of certain wells were two or three miles. The contention of the city is that these wells abstracted water belonging to the Los Angeles River, to the use of all of which water it has a paramount right. The court so found. The defendants' contention is twofold: 1. That the waters are strictly percolating waters, not belonging to the subterranean flow of the stream, but if concededly on the way to join and swell such flow, still percolating waters, to the use of which, as owners of the land, they have an absolute indefeasible right; 2. That over all the San Fernando Valley extends a clay blanket, impervious to water, underlying which blanket are water-bearing gravels; that the waters above this blanket feed the Los Angeles River, while the waters below this blanket do not; that they draw their well waters from the gravels below the blanket, and, therefore, conceding that the city of Los Angeles has a paramount right to the use of the waters of the river, they are not trespassing upon this right.

The court rejected both of these contentions in the following findings:—

"That the waters of said river, in its course through said valley, penetrate into and completely fill the voids of said permeable material, down to bedrock, under the surface channel of said river, and on both sides of said channel, throughout the whole width of said valley, from a point at or above the level of the surface stream of said river down to bedrock.

"It is not true, as alleged in the answers herein, that none of the underground waters in any of the lands of the defendants, described in the amended complaint herein, are part of the Los Angeles River, mentioned in the said amended complaint, or of the waters thereof, but are waters percolating in said lands, and forming a part of the soil thereof, so as not to constitute a stream or watercourse; but, on the contrary, the court finds that all of the underground waters in all of said lands, from the surface of the ground down to bedrock, are flowing waters, and are part of the subterranean stream of said Los Angeles River."

By these findings the court adopts the theory which is supported by the evidence of certain of the experts, that the waters of the Los Angeles River proper entering the valley sink to bedrock and spread out laterally, filling all the voids of the soil, and so move slowly down to the Narrows, where the Los Angeles River, owing to the declension in that direction of the land surface, appears as a visible stream. It is earnestly contended, against this finding that it takes no account of proved conditions; that it treats this great valley as being all a part of the Los Angeles River, and that in so doing it stultifies physical and geological facts; that it eliminates from consideration the rainfall upon the surface of the valley, —the water from all the surrounding mountains which not following well-defined channels, still by gravity is carried down and sinks into the valley lands; that the water flowing into the valley by numerous channels and sinking into the lands of the valley miles distant from the thread of the river, is by this finding treated as part of the stream long before, in the course of nature, it can have reached the true subterranean flow thereof. So it is insisted by appellants that these waters are strictly percolating waters, and that of them

they have the common-law right of absolute ownership, as modified in this state only by the doctrine of *Katz* v. *Walkinshaw,*— namely, that the *quantum* of water which they use shall be in reasonable proportion to the whole thereof, and that the water so taken shall be used upon the surface soil of the basin, or, at least, not carried away for exterior use, to the injury of any owners of the land within the basin.

But in the view which we take, it is immaterial whether the San Fernando Valley be considered a great basin, saturated by water from the inflow of the Los Angeles River and its tributaries, or saturated as a result of all the causes which appellants assign. In passing, it will suffice to say that the court was justified, upon a conflict in the evidence, in rejecting the theory of the clay blanket covering the valley at a varying depth. Unquestionably the San Fernando Valley is the great natural reservoir and supply of the Los Angeles River. Unquestionably the cutting off of this supply would as completely destroy the Los Angeles River as would the cutting off of the Great Lakes destroy the St. Lawrence. San Fernando Valley may indeed be regarded as a great lake filled with loose detritus, into which the drainage from the neighboring mountains flows, and the outlet of which is the Los Angeles River. Impeded by the soils, these waters of course move more slowly than they would in an open lake. But unquestionably the general movement of practically all is southeasterly to the Narrows, through and out of which flows the Los Angeles River proper. Unquestionably, also, a serious interruption of or interference with this supply would as certainly impair the volume of water carried by the Los Angeles River as though the interruption and interference were with a surface flowing tributary thereof. The waters of the San Fernando Valley, therefore, are not percolating waters in the common law sense of the term—vagrant, wandering drops moving by gravity in any and every direction along the line of least resistance. These waters percolate, it is true, but only in the sense that they form a vast mass of water confined in a basin filled with detritus, always slowly moving downward to the outlet, in the effort, in conformity with physical law, to attain a uniform level. If it be here conceded that the city of Los Angeles has the paramount right to the use of the waters of the Los Angeles River, then the abstraction of waters from

this valley is as clearly an interference with that right as it would be if the valley, instead of being filled with debris, were an open lake from which the river drew its whole supply. The doctrine of percolating waters as applied by the common law has of necessity been modified to meet the conditions existing in this state, conditions which never confronted the authors of that body of laws, and of the existence of which it is safe to say they never conceived the possibility. Not only has that doctrine been modified in *Katz* v. *Walkinshaw*, 141 Cal. 116, [99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766], but it has further received necessary and just modification in *McClintock* v. *Hudson*, 141 Cal. 274, [74 Pac. 849], where, quoting from the syllabus, which correctly epitomizes the view of this court, it is said: "Under the rule established in *Katz* v. *Walkinshaw* with respect to percolating waters, it is not lawful for one owning land bordering on a stream to excavate in his land, intercept percolating waters therein and apply it to any use other than its reasonable use upon the land from which it is taken, if he thereby diminishes the stream to the damage of others having rights therein." If, as here contended and found, the city of Los Angeles has paramount right to the use of all the waters of the river, then, under the doctrine thus enunciated, none of these so-called percolating waters may be withdrawn to the invasion and injury of such right. (See *Hudson* v. *Dailey, post* p. 617, 105 Pac. 748.)

To this proposition we now come. The decisions of this court in *Lux* v. *Haggin*, 69 Cal. 255, [4 Pac. 919, 10 Pac. 674] ; *Vernon Irrigation Co.* v. *City of Los Angeles*, 106 Cal. 237, [39 Pac. 762] ; *City of Los Angeles* v. *Pomeroy*, 124 Cal. 597, [57 Pac. 585] ; *Los Angeles Farming & Milling Co.* v. *City of Los Angeles*, 152 Cal. 645, [93 Pac. 869, 1135] ; taken with the cases of *Hooker* v. *City of Los Angeles*, 188 U. S. 314, [23 Sup. Ct. 395] ; and *Devine* v. *City of Los Angeles*, 202 U. S. 313, [26 Sup. Ct. 652], must be regarded as a definitive determination of the city's right. Collectively, these cases present the same arguments as are here advanced by appellants, and the decisions denying validity to these arguments must be considered as closing the contention. The right to use the water upon annexed territory not within the limits of the original pueblo is distinctly declared in *City of Los Angeles* v. *Pomeroy*, 124 Cal. 597, [57 Pac. 585]. Moreover, with the extraordinary

growth of the city of Los Angeles within the original pueblo limits of four square leagues, this question becomes of no practical importance, since it is fairly well established that all of the supply of the Los Angeles River is required for legitimate uses within the limits of the old pueblo.

We have thus considered the principal contentions advanced by appellants. Certain minor propositions may be disposed of with brief review.

The demurrer to the complaint for uncertainty was properly overruled. The city was contending that it had a paramount right to *all* of the waters of the river and it was not required to aver that any particular quantity of the water was necessary for its use. Nor was it necessary that the city's complaint should give the boundaries and locations of the irrigable land any more than it would have been required to give the number and location of homes, hotels, factories, or the like for the use of which the water was required.

It was both impracticable and unnecessary for the trial court to attempt to define the amount of water which would be required by the city from October first of each year to May first of the following year. The court having properly decreed that the paramount right to the use of the water was in the city, by its injunction restraining the defendants from diverting water from the river at any time when the city was taking the entire surface flow for the purposes for which the city and its inhabitants required the water, said all that was necessary upon this matter. (*Vernon Irrigation Co.* v. *Los Angeles*, 106 Cal. 237, [39 Pac. 762]; *City of Los Angeles* v. *Pomeroy*, 124 Cal. 597, [57 Pac. 565].)

The finding that the waters developed in the wells of the appellants are part of the subterranean flow of the Los Angeles River was, as above discussed, abundantly sustained by the evidence. It was shown that the surface stream under normal conditions is proportionate to the contributions of water from rainfall and underground storage. The wells indisputably drew from this underground supply, with the effect of appreciably diminishing the surface flow.

Appellants objected to the following question asked of the expert Koebig: "Then, assuming what Mr. Mulholland testified to with regard to the character of the material and the manner of the upbuilding of the valley is true, where, in your opinion,

does the water plane of the San Fernando Valley extend?" It is urged that this was permitting the expert Koebig to construe the testimony of the expert Mulholland and to draw inferences therefrom. But the trial court before overruling the objection called attention to the fact that the witness had heard the testimony of Mulholland and that his opinion was to be based, not upon the opinion of Mulholland, but upon the facts testified to by him. The only objection to the question that remains is that it permitted the witness to assume a recollection of all of the matters testified to by Mulholland. For the reasons given in *People* v. *Le Doux*, 155 Cal. 535, [102 Pac. 517], this method of framing what is in effect a hypothetical question is not favored, but for the reasons also there given the irregularity was not such as to call for a reversal of the case.

The court did not err in permitting the expert witnesses to give their views as to the manner in which the Los Angeles River was created. While it is true, as said in *Los Angeles* v. *Pomeroy*, 124 Cal. 597, [57 Pac. 565], that "what a subterranean stream must be in order to bring it within the law of riparian rights is a question of law," nevertheless for experts learned in geology to give their theories as to the manner in which nature has created or developed a given physical condition is not an invasion of the domain of the law.

The trial court did not err in denying the motion of appellants to bring in other parties or their motions that their suits abate until these parties were brought in. The suit being one to quiet title, based upon the plaintiff's asserted paramount right to the waters of the stream, the presence or absence of such defendants, even if situated similarly to those in the action, could not have benefited or injured the latter. It is not pretended that the court in the action actually brought could not and did not fully determine the controversy between the parties litigant.

No other matters call for special attention, and for the foregoing reasons the judgments and orders appealed from are affirmed.

Shaw, J., Angellotti, J., Melvin, J., Sloss, J., and Lorigan, J., concurred.