[L. A. No. 18155. In Bank. Oct. 14, 1943.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v. CITY OF GLENDALE, Defendant and Appellant.

[L. A. No. 18154. In Bank. Oct. 14, 1943.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v. CITY OF BURBANK, Defendant and Appellant.

70

Ray L. Chesebro, City Attorney (Los Angeles), S. B. Robinson, Chief Assistant City Attorney, Samuel Poorman, Jr., Assistant City Attorney, Robert E. Moore, Jr., Deputy City Attorney, and A. E. Chandler, Special Counsel, for Plaintiff and Appellant.

Aubrey N. Irwin, City Attorney (Glendale), Ralph W. Swagler, City Attorney (Burbank), Winfield B. Thompson, City Attorney (Burbank), Hill, Morgan & Bledsoe and Kenneth K. Wright for Defendants and Appellants.

TRAYNOR, J.—Between bedrock and the surface soil and sand, on the floor of the San Fernando Valley, there is a layer of gravel and rocks into which most of the water reaching the floor of the valley sinks. As a result, the subsurface of the valley holds a large mass of water that fills the interstices between the rocks and flows toward the lower end of the valley, eventually rising to become part of the surface flow of the Los Angeles River. This water has four sources: (1) the waters normally present in the valley; (2) the flood waters of Pacoima Creek and Tujunga Creek, which formerly flowed violently into the Los Angeles River and thence into the

Pacific Ocean during periods of heavy rainfall, but which are now dammed by the Los Angeles Flood Control District and released slowly during dry seasons to become part of the mass of water beneath the surface of the valley; (3) spread waters from the Owens River Valley, brought by plaintiff, city of Los Angeles, to the San Fernando Valley where they are spread on the gravels of the valley so that they can be stored in the subsurface thereof and reclaimed when they reach the lower end of the valley; (4) return waters, which comprise 27 per cent of certain water from the Owens River Valley sold to the farmers of the San Fernando Valley, and which settle after use beneath the surface and join the mass of water below, as anticipated when sold.

Before 1913, when plaintiff completed its aqueduct from the Owens River Valley, plaintiff used substantially all of the water in the San Fernando Basin for the needs of its inhabitants. Thereafter, plaintiff used only part of the water in the valley, and defendants city of Glendale and city of Burbank were able to pump sufficient water from the valley to satisfy their needs. In 1914 and subsequent years, the city of Glendale spent $5,602,075.94, in the acquisition of lands, drilling of wells, and installation of a distribution system. The amount of water taken by the city of Glendale steadily increased through this period. Meanwhile, the city of Burbank expended $2,090,160 for similar purposes, and took water in constantly increasing amounts from the valley. Both cities took the waters under a claim of right. Both cities have available other sources of water, since they are members of the Metropolitan Water District, and can purchase Colorado River water from it. A substantial part of defendants' investment in distribution systems would presumably be useful for the distribution of water from this source as well as from the present source. In 1936 the city of Los Angeles commenced suits against these cities to enjoin them from using the water in the San Fernando Valley and to have its rights therein, to the extent of its needs, declared prior to theirs. It later amended the complaint and withdrew the request for an injunction. The suits were consolidated for trial and the facts were for the most part determined by stipulation. Findings were made and judgments given for plaintiff in both actions, except that each defendant was declared to have a right superior to that of plaintiff to the re-

claimed flood waters. From this part of the judgment plaintiff appeals; from the remainder of the judgment defendants appeal.

It has long been established that as successor to the pueblo of Los Angeles, the city of Los Angeles has a right, superior to that of a riparian or an appropriator, to satisfy its needs from the waters of the Los Angeles River. (*Lux* v. *Haggin,* 69 Cal. 255, 329 [4 P. 919, 10 P. 674]; *Vernon Irr. Co.* v. *City of Los Angeles,* 106 Cal. 237 [39 P. 762]; *Los Angeles* v. *Pomeroy,* 124 Cal. 597 [57 P. 585]; *Hooker* v. *Los Angeles,* 188 U.S. 314 [23 S.Ct. 395, 47 L.Ed. 487, 63 L.R.A. 471]; *Devine* v. *City of Los Angeles,* 202 U.S. 313 [26 S.Ct. 652, 50 L.Ed. 1046].) Because the flow of the river is dependent on the supply of water in the San Fernando Valley, it has also been held that the pueblo right includes a prior right to all of the waters in the basin. (*Los Angeles* v. *Hunter,* 156 Cal. 603 [105 P. 755].) Since these cases were decided, however, water from new sources has been added to the basin. It has been imported from other watersheds by plaintiff, to which the pueblo right concededly does not attach, although plaintiff claims a prior right to it on other grounds. Water has also flowed into the basin from dams maintained by the Los Angeles Flood Control District impounding water from streams tributary to the Los Angeles River. Some of this water would in any case have reached the subterranean basin through the natural flow of the tributary streams, and is concededly subject to the pueblo right. In time of flood, however, much of the water from these streams flowed through the valley and into the Pacific Ocean. Plaintiff relies on its pueblo right in claiming a prior right to this reclaimed flood water also.

The fact that this water was made available by the Los Angeles Flood Control District does not determine its ownership. The district makes no claim to the water, and plaintiff's pueblo right affords no basis for an objection to any use of water that does not decrease plaintiff's supply, for such uses do not diminish the pueblo right. (*San Diego* v. *Cuyamaca Water Co.,* 209 Cal. 105, 108 [287 P. 475]; see *Vernon Irr. Co.* v. *Los Angeles, supra.*) If this water was subject to the pueblo right before it was impounded by the district, it remained pueblo water despite the erection of the dams, so that the water abandoned by the district was sub-

ject to the right. The source of this water was the Los Angeles River. ■ The past decisions of this court have stated unequivocally that the pueblo right includes the right to all of the waters of the Los Angeles River and the waters supplying it. (*Los Angeles* v. *Hunter, supra; Los Angeles* v. *Pomeroy, supra,* at 635, 636; *Vernon Irr. Co.* v. *Los Angeles, supra.*) There is no reason to suppose that this right did not include the right to take from the river, to the extent of the needs of the city, when the flow of the river was at its peak as well as at any other time. ■ Moreover, waters that are released to rejoin the body of water of which they are naturally a part are treated as natural parts of such streams. (*Crane* v. *J. J. Stevinson, Inc.,* 5 Cal.2d 387, 400 [54 P.2d 1100]; *Southern Cal. Investment Co.* v. *Wilshire,* 144 Cal. 68, 73 [77 P. 767].) The judgment of the court below was therefore erroneous in declaring that the water from this source is not subject to the plaintiff's pueblo right and that the defendants have a prior right to that source of supply.

■ Defendants contend that insofar as the pueblo right includes a potential right to waters not presently needed, it is inconsistent with article XIV, section 3 of the California Constitution, as amended in 1928, and sections 11 and 20a of the Water Commission Act. (Stats. 1913, p. 1012; Stats. 1917, p. 746; Deering's Gen. Laws, 1937, Act 9091.) Section 3 of article XIV of the Constitution provides: ". . . the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or watercourse in this state is and shall be limited to such water as shall be reasonably required for the beneficial use to be served . . . provided, however, that nothing herein contained shall be construed as depriving any riparian owner of the reasonable use of the water of the stream to which his land is riparian. . . ." The declared policy of the constitutional amendment against waste of water is thus implemented by its rule that no one has the right to more water than is reasonably necessary for the beneficial use to be served. Such

a rule in no way diminishes the rights of the successor to the pueblo, for the pueblo right has always been measured, and therefore circumscribed, by the needs of the city. It thus insures a water supply for an expanding city (see *City of Los Angeles* v. *Pomeroy, supra,* at 649) with a minimum of waste by leaving the water accessible to others until such time as the city needs it. The contention that the water will be wasted because others who need it will have no interest in making the outlay necessary to divert it is at odds with the fact that defendants did not hesitate to use the water that plaintiff did not need. (See *San Diego* v. *Cuyamaca Water Co.,* 209 Cal., at p. 140.) The same contention could be made against the existence of a riparian right to meet future as well as present needs, yet it is settled that the constitutional amendment did not destroy such a right. (*Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.,* 3 Cal.2d 489, 531 [45 P. 2d 972, 1014].) The amendment was designed primarily to destroy the right to object to the use of water not presently needed, a right that the pueblo or its successor never had. (*Gin S. Chow* v. *Santa Barbara,* 217 Cal. 673, 698 et seq. [22 P.2d 5]; *Peabody* v. *Vallejo,* 2 Cal.2d 351, 365 et seq. [40 P.2d 486].)

 Section 11 of the Water Commission Act, provides that all flowing waters in any channel are subject to appropriation, "excepting so far as such waters have been or are being applied to useful and beneficial purpose upon, or insofar as such waters are or may be reasonably needed for useful and beneficial purposes upon lands riparian thereto, or otherwise appropriated. . . . If any portion of the waters of any stream shall not be put to a useful or beneficial purpose upon lands riparian to such stream for any continuous period of ten consecutive years . . . such portion of the waters of any stream . . . unless otherwise appropriated for a useful and beneficial purpose, is hereby declared to be in the use of the state and subject to appropriation in accordance with the provisions of this act." Even assuming that this statute could constitutionally apply to plaintiff (*cf. Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist., supra,* at pp. 530, 531; *Herminghaus* v. *Southern California Edison Co.,* 200 Cal. 81, 117 [252 P. 607]; *Fall River Valley Irr. Dist.* v. *Mt. Shasta Power Corp.,* 202 Cal. 56, 68 [259 P. 444, 56 A.L.R. 264]; *Scott* v. *Fruit Growers Supply Co.,* 202 Cal. 47, 54

[258 P. 1095]), it is apparent from the face of the statute that it has no application to pueblo rights. Had the Legislature intended to destroy such rights, it would hardly have couched its strictures on the nonuse of water solely in terms of nonuse on riparian lands.

■ Section 20a of the Water Commission Act provides that "... if the party entitled to the use of water fails to use all or any part of the water claimed by him . . . for the purpose for which it was appropriated or adjudicated for a period of three years, such unused water shall revert to the public. . . ." Since pueblo rights are not based on appropriation or adjudication, this section also is inapplicable to plaintiff. (See *Bazet* v. *Nugget Bar Placers, Inc.*, 211 Cal. 607 [296 P. 616].) Moreover, in *San Diego* v. *Cuyamaca Water Co., supra,* the existence of the pueblo right was reaffirmed at a date many years after the enactment of sections 11 and 20a of the Water Commission Act.

The water transported to the San Fernando Valley from the Owens River Valley in plaintiff's aqueduct travelled two routes in joining the subsurface mass. Part of it was spread by plaintiff in gravel pits and "spreading grounds" with the object of having it sink beneath the surface to join the other water in the valley and flow with it down the valley until it reached plaintiff's diversion works. This method was adopted as the most practical for storing the water. The remainder of the water was sold to the farmers of the San Fernando Valley, and as foreseen by the parties at the time of sale, 27½ per cent of it also sank beneath the surface and joined the normal and spread waters. There was evidence that plaintiff sold water in the San Fernando valley because the water would have seeped underground in other valleys without reaching a destination where it could be recovered.

■ Plaintiff had a prior right to the use of the water brought to the San Fernando Valley. It did not abandon that right when it spread the water for the purpose of economical transportation and storage. It used a similar storage system at the source of this supply in the Owens River Valley. By availing itself of these natural reservoirs, it spared its citizens the cost of financing the construction of additional dams, if, indeed, appropriate sites were available at the lower end of the aqueduct. Early in the history of the state, this court recognized the advantage of permitting the

use of natural surface facilities, stream beds, dry canyons and the like, for the transportation of water (*Hoffman* v. *Stone,* 7 Cal. 46; *Butte Canal & Ditch Co.* v. *Vaughn,* 11 Cal. 143 [70 Am.Dec. 769]) for "It would be a harsh rule . . . to require those engaged in these enterprises to construct an actual ditch along the whole route through which the waters were carried, and to refuse them the economy that nature occasionally afforded in the shape of a dry ravine, gulch, or cañon.'' (*Hoffman* v. *Stone,* 7 Cal. at 49.) ▮ The rule of these cases was incorporated into section 1413 of the Civil Code. In codifying this rule, designed to encourage the use of natural facilities, the Legislature could hardly have intended to abrogate the right to use other natural facilities for similar purposes. Under these circumstances, the maxim *expressio unius alterius exclusio est* is inapplicable. (*Strand Improvement Co.* v. *Long Beach,* 173 Cal. 765, 772 [161 P. 975]; *People* v. *Hinderlider,* 98 Colo. 505 [57 P.2d 894].) It would be as harsh to compel plaintiff to build reservoirs when natural ones were available as to compel the construction of an artificial ditch beside a stream bed. In making water available for irrigation, plaintiff sought not only to increase cultivation of the land, but to convey some of the water into the underground reservoir of the valley. Thus, in selling water to the farmers, as in spreading water, plaintiff was interested in its economical transportation and storage.

▮ The use by others of this water as it flowed to the subterranean basin does not cut off plaintiff's rights. In *Stevens* v. *Oakdale Irr. Dist.,* 13 Cal.2d 343 [90 P.2d 58], it was recognized that one who brings water into a watershed may retain a prior right to the water after permitting others to use the water for irrigation. That case, involving water used in irrigation and then reappearing in a creek bed within the district, held that the district's rights to the water were superior to those of a lower landowner who had appropriated it. Defendants seek to distinguish this case on the ground that the water reappeared and was recaptured within the district's boundaries and was therefore within its control. The water sold by plaintiff in the instant case, however, reappeared in the basin of the San Fernando Valley, used by plaintiff for the storage of other imported waters and containing natural waters to which plaintiff had a prior right.

Once within the basin, en route to plaintiff's diversion works, it was in effect within plaintiff's reservoir. Moreover, in *United States* v. *Ide,* 263 U.S. 497 [44 S.Ct. 182, 68 L.Ed. 407], it was held that a reclamation district had the right to retake seepage, even though the water had left the boundaries of the district (accord, *United States* v. *Haga,* 276 F. 41), where such recapture had been planned when arrangements for importing the water were made. (See Wiel, *Mingling of Waters,* 29 Harv.L.Rev. 137, 147.)

It is immaterial whether the farmers who use the imported water acquire their rights through a transfer of land that includes a water right (*United States* v. *Ide, supra*) or by some other means. (See *Stevens* v. *Oakdale Irr. Dist., supra.*) In any event the importer brings the water to the land of the farmer, and the farmer uses it. Nothing would be gained by requiring plaintiff to change the form of its contracts from a ''sale'' of the water to a transfer of the right to its use. In making water available, plaintiff selected an area where it could recover as much water as possible from seepage, and it should not be deprived of the benefit of its foresight. (*United States* v. *Ide, supra,* at 506; *United States* v. *Haga, supra,* at 43; *Stevens* v. *Oakdale Irr. Dist., supra,* at 351; see Wiel, *Mingling of Waters,* 29 Harv.L.Rev. 137, 147.)

The defendants allege in a separately stated defense that the plaintiff acquired title to all the water in Owens Valley and has for some time been taking by means of its aqueduct all of the water necessary for the needs of the plaintiff and its inhabitants. The defendants offered to prove these allegations and also that the aqueduct source could amply meet not only the plaintiff's present but also its future needs ''for all time to come.'' The defendants complain of the rejection of this offer of proof. While the offered evidence would have been pertinent to the question whether an injunction should issue against the defendants, that question was no longer present when the offer of proof was made. The evidence, if received for the purpose intended by the defendants, would have required the court to determine the amount of water necessary, and the amount available, for the plaintiff's present and future needs. It was not pertinent to the issues of an action to quiet title. In *Cuyamaca Water Co.* v. *Superior Court,* 193 Cal. 584 [226 P. 604, 33 A.L.R. 1316], in defining

the issues in the action of *City of San Diego* v. *Cuyamaca Water Co.*, then pending in the superior court and later decided by this court in 209 Cal. at pages 105 et seq. [287 P. 475], this court said: "In the pending quiet title action it will not, of course, be determined that the city is or is not entitled to any particular quantity of water. . . . The subject matter of the action is the establishment of the priority of right, and not the quantity of water to be taken." (193 Cal. at p. 588.) In the present actions the trial court was not called upon to determine the relative rights of the parties to any quantities of water or to peer into the future and detail in amounts the needs of the parties when the conceded present surplus might be exhausted and their demands then be brought into conflict. No error appears in the rejection of the proffered evidence.

Defendants contend that they have acquired a right to take at least part of the water in the valley through the running of the prescriptive period. Since the pueblo right entitled plaintiff to take only the water that it needed, however, it had no occasion to object to the taking of the remainder by defendants. (*San Diego* v. *Cuyamaca Water Co., supra.*) It is settled that an appropriation must invade the rights of another before it can destroy them by the establishment of a prescriptive title. (*Moore* v. *California Oregon Power Co.*, 22 Cal.2d 725 [140 P.2d 798]; *Faulkner* v. *Rondoni*, 104 Cal. 140 [37 P. 883]; *Lakeside Ditch Co.* v. *Crane*, 80 Cal. 181 [22 P. 76]; *Alta Land & Water Co.* v. *Hancock*, 85 Cal. 219 [24 P. 645, 20 Am.St.Rep. 217]; *Hargrave* v. *Cook*, 108 Cal. 72 [41 P. 18, 30 L.R.A. 390]; *San Diego* v. *Cuyamaca Water Co., supra;* 25 Cal.Jur. 1171; 4 Tiffany, Law of Real Property, [1939] p. 575.) Defendants rely on *Pabst* v. *Finmand*, 190 Cal. 124 [211 P. 11], but that case involved a controversy between riparian owners and others making a nonriparian use of the waters of a stream. Since none of the parties to this action are claiming as riparian owners, the rules announced in the Pabst case are not applicable here.

 In claiming rights by prescription, defendants contend that if they acquired no such rights to the pueblo water, they did acquire such a title to the water imported by plaintiff into the valley. Defendants' right to take the pueblo water, however, gave them the right to take a part of the

waters in the valley, and they have not taken more than their part. Until they do, plaintiff has no cause of action and they can therefore acquire no prescriptive right. (See *E. Clemens Horst Co.* v. *New Blue Point Mining Co.*, 177 Cal. 631 [171 P. 417].)

For the same reasons there is no ground for defendants' contentions that plaintiff is estopped or barred by laches from asserting its paramount right. (*San Diego* v. *Cuyamaca Water Co., supra,* at 139; *Stevens* v. *Oakdale Irr. Dist., supra,* at 353.) ▉▉▉ Defendants rely upon the fact that their taking of the water constitutes an intervening public use of it. The intervention of a public use, however, does not bar suit by the owner of a water right; it merely limits his remedy to damages in place of an injunction. (*Hillside Water Co.* v. *Los Angeles,* 10 Cal.2d 677, 688 [76 P.2d 681]; *Peabody* v. *Vallejo, supra,* at 378.) ▉▉▉ The acquisition by the municipality of the water right, for which the holder of the right receives only damages, is "inverse condemnation" (*Hillside Water Co.* v. *Los Angeles, supra,* at 688), ▉▉▉ and property belonging to one municipality cannot ordinarily be condemned for the benefit of another. (Code Civ. Proc., sec. 1240.) In any event the present case is concerned only with the existence of the rights of plaintiff and defendants and raises no question as to the remedy.

▉▉▉ The contention that plaintiff is estopped and that defendants have obtained prescriptive rights must be viewed with regard to the city of Glendale in the light of the fact that some of the land on which this defendant pumps its water was previously involved in *Los Angeles* v. *Hunter,* and *Los Angeles* v. *Buffington,* both 156 Cal. 603 [105 P. 755], in which the existence of plaintiff's pueblo right was reaffirmed. As to those lands, this judgment is res judicata against this defendant, except as events since the judgment are relied on to establish its rights. (*Guardianship of Snowball,* 156 Cal. 240 [104 P. 444]; *Hurd* v. *Albert,* 214 Cal. 15 [3 P.2d 545].) It is unlikely that this defendant acquired the property without notice of plaintiff's rights. Since acquiring the property, the city of Glendale has not violated the injunctions given in those cases, forbidding pumping only when there was not a surplus below plaintiff's diversion works, for there has consistently been such a surplus. Under the circumstances, plaintiff's acquiescence in defendant's diversions

amounted to no more than compliance with the terms of the decree establishing plaintiff's rights. Plaintiff could reasonably suppose that in any future litigation the city of Burbank would be awarded the same right to pump on its lands that Glendale had.

Defendants contend also that the exception in the injunction in the Hunter case, allowing pumping to satisfy the needs of the unincorporated village of Burbank, is a determination that the city of Burbank may meet its needs from the basin. The judgments in both the Hunter and the Buffington cases, however, state without qualification that plaintiff is the owner "in fee simple" of a paramount right to the subsurface and surface waters of the Los Angeles River, and that the right of the defendants in those actions to take water was in subordination to the rights of plaintiff. The opinion of this court in the appeals does not indicate that there was any issue as to the assertion of a paramount right in the village of Burbank. The decree may have made the exception because there was no request for such an injunction or because it is improper to interfere with a community's water supply in a suit to which the community is not a party. Nothing in the judgment suggests that the limited right to take water allowed in the injunctions was not subject to the general declaration that the defendants in those actions could take water only in subordination to plaintiff's right. Nor is it material that plaintiff was adjudged to have a prior right only to the extent of its needs on the original pueblo lands, for the judgment was permitted to remain in that form only because plaintiff required all of the pueblo water to serve these lands. (*Los Angeles* v. *Hunter, supra,* at 608.)

Defendants contend that the trial court granted relief in excess of that available in an action for declaratory relief when it retained jurisdiction to grant such additional relief as might be necessary. The retention of jurisdiction to meet future problems is regarded as an appropriate exercise of equitable jurisdiction in litigation over water rights, particularly when the adjustment of substantial public interests is involved. (*Meridian, Ltd.* v. *San Francisco,* 13 Cal. 2d 424, 452 [90 P.2d 537, 91 P.2d 105].) In giving declaratory relief a court has the powers of a court of equity. (*Adams* v. *Cook,* 15 Cal.2d 352, 362 [101 P.2d 484] ; see *Gore* v. *Bingaman,* 20 Cal.2d 118, 120 [124 P.2d 17].) The Cuya-

maca Water Co. case, *supra*, at page 150, is not to the contrary, for it merely holds that when neither the issues nor the proof entitles a party to affirmative relief, it is error to issue an injunction in his favor. *Hoyt* v. *Board of Civil Service Commissioners*, 21 Cal.2d 399 [132 P.2d 804], makes it clear that a declaratory judgment may be obtained against municipal corporations.

The judgment in the main is correct. It is erroneous only in that it declares that the prior and paramount rights of the plaintiff do not extend to the waters retarded by the dams of the Los Angeles County Flood Control District and released therefrom. Modification and not a reversal is appropriate.

The judgment is modified to provide that the pueblo rights of the plaintiff attach to waters released from storage in the reservoirs of the Los Angeles County Flood Control District and involved in these cases. As so modified the judgment is affirmed, each party to bear its own costs on appeal.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.

Defendants and appellants' petition for a rehearing was denied November 8, 1943.