[L. A. No. 1304. In Bank.—June 1, 1904.]

## CITY OF SANTA BARBARA, Respondent, v. GEORGE H. GOULD et al., Appellants.

Water-Rights—Percolating Water in Tunnel of City—Appropriation of Water by Water Company—Public Use of Land and Water—Condemnation.—A city cannot condemn land for the preservation of water percolating therefrom in a tunnel constructed by the city for public use, where it appears that prior to the suit for condemnation a water company had appropriated the land for use to sustain the flow of water therein from a stream, a definite quantity of the water of which it had appropriated for public use.

Id.—Temporary Cessation of Flow—Tunnel and Drought.—The fact that, without the volition or fault of the defendant, and owing to the city's tunnel and the drought, the water of the stream could not flow far enough for actual public use when the suit for condemnation was commenced, cannot sustain the suit. The water company is entitled to use the water belonging to it when it flows again, and is entitled to the land to preserve the normal and natural flow of the stream.

Id.—Insufficient Complaint.—Where the complaint alleges that the plaintiff had acquired title to the land sought to be condemned, and to other lands, for the purpose of excavating a tunnel, it states no cause of action for condemnation of the land.

APPEAL from a judgment of the Superior Court of Santa Barbara County. Lucien Shaw, Judge presiding.

The facts are stated in the opinion.

George H. Gould, and R. B. Canfield, for Appellants.

Henley C. Booth, City Attorney, for Respondent.

COOPER, C.—This action was brought to condemn the west half of the northeast quarter of section 36, township 5 north, range 27 west, S. B. M., for the alleged use of plaintiff "for the purpose of obtaining the percolating waters therein, and to obtain a watershed, and to preserve the purity of the water in said tunnel." Plaintiff alleged that it had "excavated a tunnel on adjacent land owned by it at great expense, and is now obtaining water therefrom, and is supplying the city of Santa Barbara and its inhabitants with said water, but said supply is not adequate to the wants of said city and·people."

Findings were filed and judgment ordered and entered in favor of plaintiff condemning the land. This appeal is from the judgment on a bill of exceptions. It is claimed by appellant the Montecito Valley Water Company, a corporation, that the findings show that it had appropriated the land in contest for a public use prior to the filing of the complaint by plaintiff. It appears from the findings that the said water company is, and has been ever since the year 1886, a corporation duly incorporated for the purpose of distributing and supplying water for the use of the inhabitants of the county of Santa Barbara and the village of Montecito, and to collect rates for the water so furnished. That the waters to be distributed are the waters of Montecito Creek and its tributaries. That said objects are a public use, and said water company ever since its organization has been and still is in charge thereof, and has supplied and is now supplying water for the use of the inhabitants of Montecito. The case was tried in the court below upon the theory—and the judge so stated during the trial—that the public use for which plaintiff proposes to take the land is a more necessary public use than that to which it had already been appropriated by said water company. The issue was thus made to depend upon the fact as to whether or not the land had, prior to the commencement of the action, been appropriated by the said water company to the public use claimed by it. The court found that said water company "because of said diminution of said stream was not, when this action was begun, devoting the water of said stream or of the said land to any public use." This finding is in conflict with the other findings, and cannot be held sufficient to justify the judgment. The court finds elsewhere (findings 7 and 8) "that at that time said company desired to purchase said land and was without sufficient means to do so; that the said company had prior to that time derived its water supply in part from the waters of Cold Springs Branch, which, in its natural condition, was a stream of water flowing from the north to the south through said lands, and the acquisition of said land was of special value to said company as a means for the protection and preservation of said stream; . . . that prior to the commencement of this action and at the time thereof, said land was held in trust for the use and benefit of

the Montecito Valley Water Company, . . . and was so held for the purpose of preserving for said company the normal and natural flow of the water of said Cold Springs Branch; that at the time this action was begun, said company was the owner of and entitled to the amount of water of said Cold Springs Branch in its natural condition that would flow under a four-inch pressure through a five-inch pipe then maintained by it to be used to supply with water the inhabitants of the village of Montecito, but before, and at the time this action was begun, the water of said Branch had so diminished that it did not flow down to the point of diversion maintained by said company, and said diminution was caused in part by drought, and in part by the effects of plaintiff's said tunnel, and other tunnels, in draining off and out of the strata in said land sought to be condemned into said tunnels, the perco-lating water aforesaid in said strata; and because of said diminution of said stream, said company was not, when this action was begun, devoting the water of said stream or the said land to any public use.''

It is thus seen that the court in fact concluded that because of the diminution of the stream the said water company was not devoting the waters of the stream or the said land to any public use. But the court expressly found that at the time the action was begun the land was of special value to the said water company for the protection and preservation of the stream, and that said water company was the owner and en-titled to the amount of the waters of said creek that would flow through a five-inch pipe under a four-inch pressure. Be-cause the plaintiff's tunnel and the dry season had diminished the water of the creek so that it did not flow down to where said water company had its point of diversion, the plaintiff was not entitled to take the property. Plaintiff certainly could not wrongfully divert through its tunnel the waters of the creek and then claim that by reason of its own act the said water company was not using the waters of the creek for a public use. Nor was said water company responsible for the drought. It ceased to use the water because the water had ceased to flow, but this would not deprive it of the use of the water when it should again flow. Said water company had ac-quired the land for the purpose of preserving the flow of the stream in its natural state. It had the right to a portion of the

waters of the stream. It was engaged in supplying water to the public at the time the action was commenced. Its property could not be taken on the theory that it was not devoted to public use at the time this action was commenced, unless it had of its own volition ceased to devote it to public use. If a corporation formed for the purpose of supplying water to a town or city deriving its supply from a running stream can be deprived of its property because during some extraordinary dry season the water ceases to flow, it would be dangerous property to own. If the waters of said creek should never flow again, by reason of the plaintiff's tunnel or drought, the plaintiff does not need the land of the water company. If they should again flow down to the company's point of diversion, it would be entitled to the amount of water owned by it. It is also entitled to the land for the purpose of preserving the normal and natural flow of the stream. As the case must be reversed by reason of what has been said, it is not necessary to discuss other questions. It is proper, however, to observe that a vital question is raised as to the sufficiency of the complaint. It alleges in reference to the lands sought to be condemned "that plaintiff acquired title to said lands and to other lands for the purpose of excavating a tunnel." If it had acquired title to said lands and had such title at the time it commenced the action, it is not easy to comprehend why the action is brought. It is to be presumed that since the attention of plaintiff is called to the matter, that it will amend its complaint, so as to obviate the objection in case it should proceed further with the case.

It follows that the judgment should be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is reversed.

McFarland, J.,     Lorigan, J.,     Henshaw, J.,
Van Dyke, J.,      Angellotti, J.