### MONO POWER CO. et al. v. CITY OF LOS ANGELES et al. *

(Circuit Court of Appeals, Ninth Circuit. November 6, 1922.)

#### No. 3782.

Eminent domain ⊜⟶47(1)—Property appropriated to public use in one county or municipality held not subject to condemnation by another.

The statutes of California (Civ. Code, § 1001; Code Civ. Proc. §§ 1237–1264) provide for the taking of private property for public use by the people in their governmental capacity, and provide (Code Civ. Proc. §§ 1240, 1241) that not only private property but property appropriated to a public use may be taken for a more necessary public use, "but private property appropriated to the use of any county, city and county, incor-

*Rehearing denied February 12, 1923.

porated city or town, or municipal water district, may not be taken by any other county, city and county, * * * while such property is so appropriated and used for the public purposes for which it has been so appropriated." *Held,* that property owned by a public service corporation, subject to the jurisdiction and control of the state railroad commission, and used in furnishing electric lights and power to numerous cities and towns of the state and their inhabitants, is not subject to condemnation for a similar use by any other city.

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action by the City of Los Angeles and the Board of Public Service Commissioners of the City of Los Angeles against the Mono Power Company and the Southern Sierras Power Company. Judgment for plaintiffs, and defendants bring error. Reversed.

John R. Dixon, of Denver, Colo., Isaac B. Potter, of Riverside, Cal., Charles F. Potter, of Los Angeles, Cal., Henry W. Coil and Newman Jones, both of Riverside, Cal., and J. P. O'Brien, of San Francisco, Cal., for plaintiffs in error.

Jesse Stephens, City Atty., W. B. Mathews, S. B. Robinson, Ray C. Eberhard, and Trent G. Anderson, all of Los Angeles, Cal., and Chas. A. Adams, of San Francisco, Cal., for defendants in error.

T. W. Duckworth, Dist. Atty., of San Bernardino, Cal., and Loyal C. Kelley, Dist. Atty., of Riverside, Cal., for San Bernardino and Riverside counties, as amici curiæ.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. This is an action or proceeding brought by the defendants in error (plaintiffs in the court below) for the purpose of condemning certain land, water rights, and rights of way owned by the plaintiff in error the Southern Sierras Power Company (one of the defendants in the court below), situate in the east half of section 16, in township 5 south, range 31 east, Mt. Diablo base and meridian, in what is known as the Owens river gorge, in the county of Mono, state of California, for the use of the defendant in error the city of Los Angeles, in the county of Los Angeles.

The complaint as originally filed in the state court contained allegations usual in a bill for the condemnation of real property. It also contained allegations appropriate in an action to quiet title to certain other real property.

The first cause of action was for the condemnation of the property of the Southern Sierras Power Company, described as the east half of section 16, township 5 south, range 31 east, Mt. Diablo base and meridian; and the second was a cause of action to quiet title to the adjoining property described as section 9 in the same township, base, and meridian.

The defendants in error are citizens of the state of California, and the plaintiff in error the Southern Sierras Power Company is a citizen of the state of Wyoming. Upon this diverse citizenship the case was removed to the United States District Court for the Northern District of California.

284 F.—50

By reason of the separable controversy presented in the original complaint wherein the city of Los Angeles seeks in equity to quiet title to its property in section 9, and by proceedings at law to condemn the property of the plaintiff in error in the east half of section 16, the defendants in error filed, in the United States District Court, their amended bill of complaint for the condemnation of the property of the plaintiff in error situate in section 16. This last-amended complaint states the cause of action now before the court.

The parties will hereafter be designated as in the court below—plaintiff for the city of Los Angeles, and defendant for the Southern Sierras Power Company.

The allegations of the amended complaint are in substance as follows:

The plaintiff the city of Los Angeles is a municipal corporation of the state of California, situate in the county of Los Angeles.

That from time immemorial there has been, and now is, an unnavigable natural stream of water, commonly known and designated as "Owens river," which has its source in the Sierra Nevada Mountains, in the county of Mono, state of California, and which flows in its natural channel in a general southeasterly direction and discharges into Owens Lake, in the county of Inyo, in said state.

That said Owens river, in its natural channel, flows down to and through the land sought to be condemned in this case.

That for more than a year prior to the commencement of this action, the said city of Los Angeles had been operating and maintaining an electric system for generating, transmitting, and distributing electric energy for the use of the city of Los Angeles and its inhabitants, furnishing approximately 40 per cent. of the public street lighting of said city.

That it is necessary for the city to provide additional electric energy for the present and future needs of said city and its inhabitants for the purpose of heat, light, and power.

That in providing such additional electric energy, it is necessary, and the public interest and necessity require, that said city must take and condemn "all rights in or to the waters of said Owens river flowing down to and through the aforesaid land or in any wise pertaining to said land, together with the right to divert, take, and store said water and utilize the same for the generation of electric energy"; also, a right of way and easement in, over, upon, and across that certain strip of land 200 feet wide, situate westerly from the Owens river on the east half of section 16 and extending from the northern to the southern boundary, for the purpose of constructing and operating tunnels, pipe lines, poles, wires, cables, etc., necessary for the transmission of the electric energy, together with all necessary means of ingress to and egress from said right of way.

That said public use and improvement is located in the manner which will be most compatible with the greatest public good and the least private injury, and the public use to which plaintiffs intend to apply the aforesaid property herein sought to be condemned is a more necessary use than that to which said defendants, or either of them, have appropriated or intend to appropriate the same.

That on February 6, 1920, the Los Angeles city council and the board of public service commissioners adopted resolutions to the effect that it was for municipal purposes and the public interest to acquire such property by condemnation.

The prayer of the complaint is for a decree providing for such condemnation.

In their answer, defendants deny that the Mono Power Company is, or was at the time of the commencement of this action, the owner of the east half of section 16 above mentioned, but that the Southern Sierras Power Company had been, since February 7, 1920, and was then, the owner of said land; deny that it was necessary for the city of Los Angeles to provide additional electric energy for the present and future needs of the city and its inhabitants; deny that it was necessary for the city to take and condemn the property and its water rights, the right to divert the waters of Owens river, or a right of way and easement over said land, or a right of ingress or egress to or from said land; deny that the property is so located that its application by the city to the public use mentioned in the complaint will be the most compatible with the greatest public good and the least private injury; deny that the use to which the city intends to apply the property is more necessary than the use to which it has already been appropriated by the plaintiffs in error.

Allege that all of the property herein sought to be condemned was, at the time of the commencement of this action, and ever since has been, and is now, appropriated to the use of the incorporated town of Bishop, situate in the county of Inyo, state of California, to the use of the incorporated cities and towns of San Bernardino, Redlands, and Rialto, situate in the county of San Bernardino, state of California, to the use of the incorporated cities and towns of Riverside, Corona, Perris, Hemet, San Jacinto, and Elsinore, in the county of Riverside, state of California, to the use of the incorporated cities and towns of El Centro, Calexico, Brawley, Holtville, Calipatria, Imperial, and Niland, situate in the county of Imperial, state of California, and to the use of the following named municipal water districts, situate in the said county of Imperial, to wit: Imperial irrigation district No. 1 and Imperial irrigation district No. 2, and to the use of the inhabitants of each and all of the above-named cities and towns and to the use of each and all of the above-named counties and the inhabitants thereof.

Allege that the Southern Sierras Power Company is, and was at the time of the commencement of this action, and had been long prior thereto, a duly authorized public service corporation, operating hydroelectric and steam power generating plants and transmitting and selling and distributing the same in and through and to each of the before-mentioned counties, and incorporated cities and towns, and municipal water districts, and the inhabitants thereof, for the purpose of light and heat and power and for all other purposes for which electric energy can be used.

That the east half of the said section 16 and the water rights, part and parcel and appurtenant thereto, mentioned and referred to and described in the complaint of the plaintiff, are, and at all times herein

mentioned have been, a necessary part of the electric power system of the defendant the Southern Sierras Power Company.

Lacking information and knowledge, defendants deny the adoption of the resolutions mentioned in the complaint, and allege that the value of the water rights sought to be condemned is the sum of $1,000,000, and that the value of the right of way sought to be condemned is the sum of $125, and that the severance damages which will be suffered by the Southern Sierras Power Company in the event of the condemnation of the water right herein sought to be taken will be the sum of $250,000.

The prayer of the answer is that the plaintiffs take nothing by this action, and for compensation and damages in the event of the condemnation of the property sought to be taken.

The case was tried before the court and a jury. The court instructed the jury that the compensation to be awarded to the defendant was the actual value of the property on the 9th day of February, 1920, when the complaint was originally filed in the superior court of Mono county, and not the value of the property at the date of the trial, and that under the evidence no severance damages could be found or awarded.

All other issues in the cause having been submitted to the court for its decision, the court made and filed its findings of fact and conclusions of law, wherein it was found by the court, among other things, that the plaintiff, in pursuance of its charter, owns, and for more than a year prior to the commencement of this action had been operating and maintaining, an electric system for generating, transmitting, and distributing electric energy for the use of said plaintiff and its inhabitants for domestic lighting, and for industrial and commercial uses and purposes in portions of said city, and furnishing approximately 40 per cent. of the public street lighting of said city; that it was necessary for said plaintiff to provide additional energy for its present and future needs and that of its inhabitants for purposes of heat, light, and power; that for the purpose of such additional electric energy, it was necessary, and the public interest and necessity required, that said plaintiff take and condemn all rights in or to the waters of Owens river flowing down to and through the land of defendant, or in any wise pertaining thereto, together with the right to divert the same for the generation of electric energy, and also to condemn the right of way and easement described in the amended complaint; that said public use and improvement are located in the manner which will be most compatible with the greatest good and the least private injury; that the public use to which the plaintiff intends to apply the said property is a more necessary use than any to which the defendant has appropriated or intends to appropriate the same; that the use to which the property sought to be condemned is to be applied is a use authorized by law, and that the taking thereof is necessary to such use; that the issue herein was not tried within one year after the commencement of this action because of delay caused by the defendant.

The value of the property, as found by the jury, is found by the court, and as a conclusion of law that the plaintiff is entitled to an interlocutory decree for the condemnation of the property described in

the amended complaint. From the decree so entered, the present writ of error is prosecuted.

It appears from the record that in the year 1907, the plaintiff, for the purpose of providing additional water for the use of itself and its inhabitants, began the construction of an aqueduct having a capacity of approximately 420 second feet of water, and known as the "Los Angeles aqueduct." This aqueduct was completed in 1912. It diverts the water of Owens river at a point between Independence and Big Pine in Inyo county, and conveys the water a distance of approximately 240 miles to a reservoir near the city of Los Angeles. Owens river takes its rise on the eastern side of the Sierra Nevada Mountains, south of Mono Lake. It flows southeast for approximately 150 miles, and empties into Owens Lake. The latter has no outlet, and its water is of such an alkaline character that it is not suitable for domestic purposes. The Los Angeles aqueduct has accordingly been constructed up the western side of the lake, and up Owens river to a point on the river approximately 30 miles above the north end of the lake, where fresh potable water is diverted into the aqueduct. This point is designated in these proceedings as the "intake."

. There is no question in this case relating to this aqueduct or its diversion of water from Owens river. It is referred to merely to identify geographically the land sought to be condemned. The land is situated in a deep gorge on the west bank of Owens river, about 50 miles above the aqueduct intake. The gorge is 15 or 16 miles in length, and the land sought to be condemned is about midway of this gorge.

The land on both sides of the gorge, above and below section 16, is owned by the plaintiff.

Owens river has a fall passing through the gorge of about 2,200 feet. The average fall is 137 feet for each mile. The fall through section 16 is in excess of this average, being about 420 feet.

The fall of the river at this point gives the land and its riparian rights its chief, if not its entire, value. It has no other substantial value at this time. The value of a water right for power purposes is practically in proportion to the head of water that can be developed.

On June 1, 1897, the state of California conveyed section 16 to Edson F. Adams, where the title remained until February 21, 1911, when Adams conveyed the property to the Mono Power Company. This corporation held the title until February 7, 1920, when it conveyed the title to the defendant, which is now the exclusive owner.

Prior to the commencement of this suit, the plaintiff had been negotiating with the Mono Power Company to purchase the east half of section 16, but such negotiations had failed to reach a satisfactory result.

There is some question made by the plaintiff that the sale of this land by the latter company to the defendant, pending these negotiations, involved some element of bad faith. When the trial was approaching a conclusion in the lower court, one of the attorneys for the defendant inquired whether the ruling it had made concerning the date of the sale would preclude counsel from arguing to the jury to show the good faith of defendant's purchase. The court replied that there was no

question made as to defendant's good faith in the purchase, and that question was thereupon dropped from the case in the trial court.

We do not find in the proceedings any justification for the claim being made in this court that there was bad faith in the transaction.

The defendant, at the time of its purchase of this tract of land, and for some time prior thereto, had been, and was then, engaged in operating hydroelectric and steam power generating plants in the counties of Mono, Inyo, and San Bernardino in the state of California, and operating certain transmitting and distributing lines therefrom and into the counties of Mono, Inyo, Kern, San Bernardino, Riverside, and Imperial in said state, and by means of such property it was, and had been, a public service corporation engaged in the business of generating electric energy at and by means of said generating plants, and engaged in transmitting, selling, and distributing electric energy in and through the counties named to the incorporated cities and towns and municipalities and to the inhabitants thereof for the purposes of light, heat, and power, and for all other purposes for which electric energy can be used; and section 16, township 5 south, range 31 east, Mt. Diablo base and meridian, was purchased for the purpose of increasing the capacity of the defendant and enable it to meet the demands of the inhabitants of such municipalities, cities, towns, and counties.

The court found, as a fact, that the defendant was, on the 7th day of February, 1920, and ever since had been, the owner of the land sought to be condemned. This suit was commenced February 9, 1920. There was evidence uncontradicted that on that date there was a very large market available for the consumption of the potential hydroelectric power that was about to be developed for the public use by the defendant on the land sought to be condemned; that this power was to be so developed for the power requirements of the inhabitants of the territory then being served by the defendant; that this territory included an area of 40,000 square miles, extending from a point as far north as San Francisco on the eastern side of the state, and to the Mexican border, and including the counties of Inyo, Eastern Kern, San Bernardino, Riverside, and Imperial, the population of which was, at that time, close onto a quarter of a million inhabitants, and rapidly increasing.

The defendant had over 900 miles of high-tension transmission lines traversing this territory, and over 1,000 miles of distributing lines. The public service rendered by the defendant in this territory includes duly authorized public service to the municipalities and the inhabitants of Bishop and Big Pine, in Inyo county; Johannesburg and Randsburg, in Kern county; San Bernardino, Redlands, and Rialto, in San Bernardino county; Riverside, Corona, Elsinore, Hemet, and San Jacinto, in Riverside county; El Centro, Brawley, Calexico, and Holtville, in Imperial county.

The power available at that time was not sufficient to meet the maximum demands of that territory, and the land sought to be condemned was a power site necessary and appropriate to enable the defendant to construct a plant that would supply such demand.

Los Angeles is a large and growing city. Its growth has been

phenominal. The development of its varied industrial and commercial resources has been remarkable. The electrical energy furnished by the municipal system is insufficient to supply the present demands.

During the fiscal year ending June 30, 1920, municipal plants supplied a little less than one-half (47½ per cent.) of the electrical energy used for general purposes, exclusive of the railways, or approximately 30 per cent. of the total used in the city, including electric railways. It supplies 40 per cent. of the municipal lighting system, the Southern California Edison Company, a private corporation, supplying 25 per cent. or 27 per cent. of the total energy used in the city, and the remaining 25 per cent. being supplied by the steam plant of the Los Angeles Gas & Electric Corporation. The city does not contemplate taking over any of the generating system of the Edison Company.

To supply at least a part of the present and prospective deficiency of electric energy required in the city, it is seeking the condemnation of the defendant's property in the Owens river gorge.

There are a number of interesting questions involved in this case, the most important of which is whether this proceeding can be maintained by the plaintiff against the defendant under the statutes of California upon the facts as stated.

The right of the people in their governmental capacity to take private property for public use, under the Constitution of the state, is provided for in section 1001 of the Civil Code, and sections 1237 to 1264 of the Code of Civil Procedure. These sections, prescribing what property may be taken and the manner of such taking, have been amended from time to time, to keep pace with the development of the water resources of the state, the necessity for their conservation, and the growth of the public utilities of the state engaged in their distribution. These amendments have been adopted by the Legislature to meet what appeared to be exceptional situations as they arose in the application of the statutes to municipal and private corporations and irrigation districts and the acts relating to public utilities. The result is that the statutes, as a whole, bristle with amendments, provisions, qualifying subdivisions, and clauses to an extent that makes them difficult of construction with respect to certain of their features.

It is to be regretted that the Supreme Court of the state has not been called upon to construe these statutes with respect to the question here presented to this court. The case of the City of Santa Barbara v. Gould, 143 Cal. 421, 77 Pac. 151, cited to the court as an authority, does not appear to be applicable to this case.

Omitting reference to provisions which do not appear to have any material bearing upon the questions involved in this case, we will refer to such provisions of the Codes as relate to the important question to be here determined.

The defendant is a public service corporation, operating under the authority of the Public Utilities Act of the State of California of April 23, 1915 (Stats. of California 1915, p. 115), and amendments thereto, and by the terms of that act and its amendments acting under the supervision and regulations of the State Railroad Commission.

Section 1001 of the Civil Code provides:

"Any person may, without further legislative action, acquire private property for any use specified in section twelve hundred and thirty-eight of the Code of Civil Procedure either by consent of the owner or by proceedings had under the provisions of title seven, part three, of the Code of Civil Procedure; and any person seeking to acquire property for any of the uses mentioned in such title is 'an agent of the state,' or a 'person in charge of such use,' within the meaning of those terms as used in such title."

### Section 1237, Code of Civil Procedure, provides:

"Eminent domain is the right of the people or government to take private property for public use. This right may be exercised in the manner provided in this title."

### Section 1240, Code of Civil Procedure, provides:

"The private property which may be taken under this title includes: (1) All real property belonging to any person. * * * (4) Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has already been appropriated; provided, that where any such property has been so appropriated by any individual, firm or private corporation, the use thereof for a public street or highway of a county, city and county, or incorporated city or town or the use thereof by a county, city and county, incorporated city or town, irrigation or municipal water district, for the same public purpose to which it has been so appropriated, or for any other public purpose, shall be deemed more necessary uses than the public use to which such property has already been appropriated. * * * *But property appropriated to the use of any county, city and county, incorporated city or town or municipal water district, may not be taken by any other county, city and county, incorporated city or town, or municipal water district, while such property is so appropriated and used for the public purposes for which it has been so appropriated."*

### Section 1241, Code of Civil Procedure, provides:

"Before property can be taken, it must appear:

"(1) That the use to which it is to be applied is a use authorized by law;

"(2) That the taking is necessary to such use; provided, when the legislative body of a county, city and county, or an incorporated city or town, shall, by resolution or ordinance, adopted by vote of two-thirds of all its members, have found and determined that the public interest and necessity require the acquisition, construction or completion, by such county, city and county, or incorporated city or town, of any proposed public utility, or any public improvement, and that the property described in such resolution or ordinance is necessary therefor, such resolution or ordinance shall be conclusive evidence: (a) of the public necessity of such proposed public utility or public improvement; (b) that such property is necessary therefor, and (c) that such proposed public utility or public improvement is planned or located in the manner which will be most compatible with the greatest public good, and the least private injury; provided, that said resolution or ordinance shall not be such conclusive evidence in the case of the taking by any county, city and county, or incorporated city or town, of property located outside of the territorial limits thereof.

"(3) If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use, provided, that where such property has been so appropriated by any individual, firm or private corporation the use thereof for a public street or highway of a county, city and county, or any incorporated city or town, or the use thereof by a county, city and county, or any incorporated city or town, or a municipal water district for the same purposes to which it has been appropriated, or for any other public purpose, shall be deemed a more necessary use than the public use to which such property has been already appropriated; and provided, further, that property of any character, whether already appropriated to public use or not, including all rights of any nature in water, owned by any person, firm

or private corporation may be taken by a county, city and county, or any incorporated city or town or by a municipal water district, for the purpose of supplying water, or electricity for power, lighting or heating purposes to such county, city and county, or incorporated city or town, or municipal water district, or the inhabitants thereof, or for the purposes of supplying any other public utility, or for any other public use. And such taking may be made, either to furnish a separate and distinct supply of such water, and such electricity for power, lighting or heating purposes, or to provide for any such separate and distinct other public utility or other public use; or to furnish such a supply or provide for any such other public utility or other public use in conjunction with any other supply or with any other public utility or other public use that may have been theretofore provided for or that may thereafter be provided for in so supplying or providing for such county, city and county, or incorporated city or town, or municipal water district or the inhabitants thereof; or in conjunction with any other supply or with any other public utility or other public use that may have been theretofore determined upon or that may thereafter be determined upon in accordance with law by the people of any such county, city and county, incorporated city or town or municipal water district. * * * *But private property appropriated to the use of any county, city and county, incorporated city or town, or municipal water district, may not be taken by any other county, city and county, incorporated city or town, or municipal district, while such property is so appropriated and used for the public purposes for which it has been so appropriated.*"

The terms "county, city and county, incorporated city or town," represent certain political subdivisions of the state. They also represent the inhabitants collectively. Webster, Worcester, Century dictionaries, and Denver v. Coulehan, 20 Colo. 471–479, 39 Pac. 425, 27 L. R. A. 751; 11 Corpus Juris, 787.

The question we have to determine is, not whether the city of Los Angeles has the right to condemn the property of a private corporation appropriated to a public use in the service of the city of Los Angeles and its inhabitants, but whether the city of Los Angeles has the right to condemn the property of a private corporation whose property has been already wholly appropriated to the public use of some other county, municipality, incorporated city and town, and the inhabitants thereof.

The theory upon which a municipal corporation may condemn and appropriate to a public use the property of a private corporation engaged in serving such municipality or its inhabitants is that the private corporation is using its property for a public use for a profit, and that the municipality has the right, in the interest of itself and its inhabitants, as an economical administrator of municipal affairs, to perform this public service itself and thus eliminate the profits of the private corporation.

That is not this case. The defendant is not rendering any public service to the city of Los Angeles or its inhabitants, and it does not propose to do so. Defendant's transmission and distributing lines do not extend into the city of Los Angeles, and it has not proposed to so extend them. The property of the defendant has been appropriated to the public use of other counties, municipalities, incorporated cities and towns, and the inhabitants thereof, and not for the city of Los Angeles or its inhabitants.

The court instructed the jury that the public use to which the plaintiff intended to apply the said property was a more necessary use than

any to which the defendant had appropriated, or intended to appropriate, the same. There was no evidence in the case to the effect that the use of the property sought to be condemned for the purpose of providing electric energy for the present and future needs of the city of Los Angeles and its inhabitants was in fact a more necessary use than the public use of the property by the defendant for the present and future needs of the counties of Mono, Inyo, Eastern Kern, San Bernardino, Riverside, and Imperial, and the municipalities and incorporated cities and towns in said counties and their inhabitants heretofore mentioned.

It is not pretended that the instructions of the court were based upon any such evidence, but were based upon the ruling of the court made at different times during the progress of the trial that the defendant, the owner of the property sought to be condemned, was a private corporation which had appropriated and dedicated the said property to the public use of the counties, certain municipalities, and incorporated cities and towns and the inhabitants thereof, heretofore mentioned; whereas the plaintiff the city of Los Angeles, seeking to condemn this property for its own use and the use of its inhabitants, was a municipal corporation, authorized by its charter to perform this service for the city of Los Angeles.

In other words, it was held that the public use of a municipal corporation for the city of Los Angeles was a more necessary use than the public use of a private corporation for any other county, municipality, incorporated city or town.

Counsel for the plaintiff stated their contention upon this question very succinctly as follows:

"The law of the state presumes that the use of property by a municipality is a higher use than the use of it by a private corporation."

The court asked: "Suppose that they" (referring to the defendant) "show that their use is for a municipality?" to which counsel replied:

"We anticipated that counsel would urge that point, and we are prepared to show your honor that that is not the law as we conceive it, and confidently believe that the preference is between a private corporation and a public corporation, regardless of who that private corporation may be serving."

It was suggested by the court that there might be a conjoint or coincident use of the land sought to be condemned, to which counsel for the plaintiff replied:

"What is sought to be condemned in this action is the right to take the water completely out of the channel of the river and carry it through these various plants of the city of Los Angeles, which carries with it not merely the taking out, but the matter of the regulation of the flow. There is a use proposed by the city of Los Angeles which is absolutely inconsistent with the continuance of any use of the property for any utility purpose by the defendant. We cannot see how any joint use could possibly enter into the situation."

This was plainly the precise question that occurred to the Legislature of California at its session of 1913, when certain amendments to the Eminent Domain Act were under consideration.

Senator Boynton, of Butte county, introduced in the Senate two bills amending sections 1240 and 1241 of the Code of Civil Procedure

in certain particulars. The bills were referred to the Judiciary Committee, where it was a question whether they might not permit the condemnation by one county, city and county, etc., of property owned by or lawfully appropriated to the use of another county, city and county, etc.

The committee reported the bills to the Senate with an amendment to each section. These two amendments are now the final clause of subdivision 4 of section 1240, and the final clause of subdivision 3 of section 1241, which we have italicized for convenient reference.

It is plain that these two amendments were added to the bill to meet the precise question above mentioned and just such a situation as we have in this case, namely, the claim of a right of a municipal corporation to condemn the property already appropriated to the public use by a private corporation in another county, or other local subdivision, as it would have the right in its own municipality.

The court adopted this construction of the statute, notwithstanding the plain language of these amendments, and held that these final clauses added to subdivision 4 of section 1240, and subdivision 3 of section 1241, as limiting the exception to property that may be taken to property appropriated by "any county, city and county, etc.," and not as the clause reads, "property appropriated to the use of any county, city and county, etc., may not be taken by any other county, city and county, etc."

An objection to this construction is that the words "property appropriated to the use of" are used elsewhere in the subdivision to distinguish an appropriation by a private corporation from an appropriation "by" a county, city and county, etc.

For example, in a preceding clause of subdivision 4 of section 1240, the exemption of property which may be taken for public use includes certain property appropriated by a private corporation to a public use, and also property appropriated by a county, city and county, etc., to a public use. The same distinction is made in subdivision 3 of section 1241.

The statute having made this distinction in the preceding provisions of both sections, we are of the opinion that the Legislature recognized the distinction, and purposely used the broader phrase, "property appropriated to the use of" to include an appropriation by a private corporation, as well as an appropriation by a county, city and county, etc.

As said by the Supreme Court of the United States in Montclair v. Ramsdell, 107 U. S. 147, 152, 2 Sup. Ct. 391, 395 (27 L. Ed. 431):

"It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the Legislature was ignorant of the meaning of the language it employed."

Applying this well-known rule of construction to these two amendments, we must hold that it was the purpose of the Legislature to provide that property of a private corporation, as well as property of a municipal corporation, appropriated to the public use in one county, may not be appropriated to a public use by any other county, city and county, while such property is so appropriated and used.

And in confirmation of this view of the statute, we find, in Merrill v. South Side Irrigation Co., 112 Cal. 426, 433, 44 Pac. 720, 722, decided in 1896, "a public use" defined by Commissioner Searles of the Supreme Court, concurred in by his associate commissioners and affirmed by the Supreme Court, as follows:

"When water is designated, set apart, and devoted to purposes of sale, rental, or distribution, it is appropriated to those uses, or some of them, and becomes subject to the public use declared by the Constitution, without reference to the mode of its acquisition."

Finally, the Public Utilities Act makes an electrical corporation, among other private corporations, a public service corporation, and provides, in section 2 (bb) that when any such corporation, whether private, municipal, or other political subdivision of the state, performs a service or delivers a commodity to the public, or any portion thereof, for which any compensation or payment whatsoever is received, such corporation is declared to be a public utility, subject to the jurisdiction, control, and regulation of the Railroad Commission and the provisions of the act, and under section 13 of the act, all charges of such corporation must be just and reasonable, and the service, instrumentalities, equipment, and facilities shall be such as shall promote the safety, health, comfort, and convenience of its patrons, employees, and the public, and shall be in all respects adequate, efficient, just and reasonable; and in section 32 the Railroad Commission is authorized upon its own motion or upon complaint, to determine for such a corporation what are just or reasonable or sufficient rates, fares, tolls, rentals, charges, and classifications to be thereafter observed and in force and shall fix the same by order; and in section 51 of the act it is provided that—

"No * * * electrical corporation * * * shall henceforth sell, lease, assign, mortgage or otherwise dispose of or incumber the whole or any part of its * * * plant or system, necessary or useful in the performance of its duties to the public, or any franchise or permit or any right thereunder, nor by any means whatsoever, direct or indirect, merge or consolidate its * * . * plant or system * * * with any other public utility, without having first secured from the commission an order authorizing it so to do."

It is further provided that—

"Every such sale, lease, assignment, mortgage, disposition, incumbrance, merger or consolidation made other than in accordance with the order of the commission authorizing the same shall be void."

If, by reason of the "public use" to which defendant's property had been appropriated, under the law of the state defendant could not sell, lease, assign, mortgage, or otherwise dispose of or incumber its property, and could not merge or consolidate its plant or system with any other public utility without the authority of the Railroad Commission, we do not see how, with or without such authority, its property could be condemned by another corporation in another county for a public use in that other county because the property had not been and was not then appropriated by the defendant to a public use within the meaning of the amendment to the statute of 1913 under consideration.

It follows that these proceedings cannot be maintained against the property of the defendant described in the complaint.

The decree is accordingly reversed, with direction to dismiss the complaint. The proceedings in this court at plaintiff's cost.