[L. A. No. 9216. In Bank.—March 21, 1930.]

THE CITY OF SAN DIEGO (a Municipal Corporation), Respondent, v. THE CUYAMACA WATER COMPANY (a Corporation) et al., Defendants and Appellants; LA MESA LEMON GROVE AND SPRING VALLEY IRRIGATION DISTRICT et al., Interveners and Appellants.

Crouch & Sanders, Sweet, Stearns & Forward and Stearns, Luce & Forward for Defendants, Interveners and Appellants.

Newman Jones and Henry W. Coil, *Amici Curiae* in Support of Appellants.

Shelley J. Higgins and James E. O'Keefe, City Attorneys, Arthur F. H. Wright and Harry S. Clark, Deputies City Attorney, and Hunsaker, Britt & Cosgrave for Respondent.

Erwin P. Werner, City Attorney, W. B. Mathews and S. B. Robinson, *Amici Curiae* in Support of Respondent.

RICHARDS, J.—This action was commenced on May 20, 1924, in the county of San Diego, by the plaintiff, a municipal corporation, against Cuyamaca Water Company, a corporation, and Cuyamaca Water Company, a copartnership, and also against Ed Fletcher as the sole surviving member of said copartnership, and one C. F. Stern, the defendants named in the original complaint therein, the purpose of said action being that of the condemnation of a certain tract of land containing approximately 200 acres lying along the course of the San Diego River about twenty miles above said city and just below what is known as the "Capitan Grande Indian Reservation," consisting of approximately 17,000 acres of land, of which about 1100 acres had theretofore been conveyed to the City of San Diego by an act of Congress for the development of a municipal reservoir for the impounding of the waters of the San Diego River for the municipal uses of said city. The tract of land involved in the present action adjoins the larger tract thus acquired and is also adjacent to certain other lands secured by said city from private owners; and the particular uses to which said land, in conjunction with the other adjacent lands, are to be applied are those of a dam site upon which it is proposed to erect a structure to be known as "El Capitan dam." The river flows through this dam site partly upon

or under the lands thus sought to be condemned, and partly upon or under the lands which are thus already under the control of the city. The defendants appeared in the action by separate demurrers, which being overruled they answered, setting up numerous defenses to the action hereinafter to be considered in detail, and also embracing much the same matters in the form of cross-complaints. Subsequent thereto the plaintiff proffered certain important amendments to their original complaint, and the defendants also presented certain amendments to their answers and cross-complaints. In the meantime and on January 25, 1925, La Mesa Lemon Grove and Spring Valley Irrigation District, a corporation, caused itself to be made a party to the action, alleging that it had acquired an interest in the properties involved in the litigation by virtue of the fact that shortly before the institution of the action it had obtained from Cuyamaca Water Company, a copartnership, an option to purchase all of the property of said copartnership, including the particular tract of land in controversy, and that subsequent to the date of the institution of this action it had complied with the terms of said option, which had thereby become a contract of purchase and sale of said properties between itself and said copartnership, and was therefore entitled to urge on its own behalf numerous defenses to said action to be hereafter considered. When these various pleadings, original and amended, were finally filed and the issues thus made up, the action was transferred to the county of Orange for trial, and was there brought to trial upon June 15, 1925. The trial court properly considered the issues in the action as of a twofold nature, the first involving questions relative to the right and necessity for the condemnation sought by the municipality, and second as to the damages to which the defendant would be entitled in the event of such condemnation. The first of these issues was to be determined by the court, the second by a jury, which was accordingly impaneled and sworn. In the meantime the trial court proceeded with the trial of the issues to be determined without a jury, and having determined these issues in the plaintiff's favor, the trial of the cause upon the issues of damages was proceeded with before the jury, which after a long trial lasting until August 9, 1925, returned a verdict in favor of the defendants, fixing the

damages which the defendants would sustain as a result of the condemnation of said lands at the sum of $600,000. The findings of fact and conclusions of law of the court were thereupon signed and filed. Thereafter the plaintiff presented a motion for a new trial upon all the statutory grounds, but particularly stressed therein and upon the hearing thereon that the award of damages by the jury was excessive. The trial court granted the plaintiff's motion for a new trial, chiefly upon the foregoing ground; wherefrom the defendants took and perfected an appeal from the order of the trial court granting a new trial; and also took and perfected an appeal from that portion of the judgment of the trial court determining that the plaintiff was entitled to condemn the lands in question or any portion thereof. These appeals are presented to this court upon a bill of exceptions prepared and settled subsequent to the taking thereof. The cause upon these appeals was transferred to the jurisdiction of the District Court of Appeal, and upon the transfer thereof a motion was therein made to dismiss that portion thereof which had relation to the part of the judgment appealed from, and which motion was denied by said court (*City of San Diego* v. *Cuyamaca Water Co. et al.,* 80 Cal. App. 599 [251 Pac. 341]). Thereafter the cause upon its merits was, after decision in said court, transferred to this court for hearing and determination. We may dispose of the foregoing phase of the case by stating that, whether or not we are in accord with all that is stated by said court in its opinion therein, we agree with its order denying said motion to dismiss said appeals, preferring to decide the matters involved in these appeals upon the merits thereof.

In the determination of these appeals upon their merits we shall first consider and dispose of the appellants' contentions made upon their appeal from the portions of the judgments complained of. In their several answers and affirmative pleadings herein the defendants have consistently asserted that the plaintiff, as a municipal corporation, is not as a matter of law entitled to maintain this or any action for the condemnation of the particular lands and properties sought to be taken and applied to the municipal uses through the medium of a condemnation proceeding, for the reason that there are certain statutory provisions in the codes of

this state which have application to the instant situation, and which prohibit the plaintiff from the institution and maintenance of this form of action. In support of this contention the defendants have pleaded and undertaken to establish the fact that the lands affected by this proceeding, including the waters of the San Diego River which flow through said lands, form and have long formed an integral portion of the properties of the Cuyamaca Water Company, and as such have for a long time prior to the inception of this action been and still are actually appropriated to the use of certain cities, towns and water districts other than the plaintiff herein, and particularly to the use of the La Mesa Lemon Grove and Spring Valley Irrigation District, which, as we have seen, has made itself one of the defendants herein. The statutory provisions upon which these defendants and appellants thus rely are those found in certain amendments to the Code of Civil Procedure adopted in the year 1915, the special provisions of which thus relied upon herein reading as follows: "But property appropriated to the use of any county, city and county, incorporated city or town, or municipal water district may not be taken by any other county, city, city and county, incorporated city or town, or municipal water district while such property is so appropriated and used for the public purposes for which it has been so appropriated." (Code Civ. Proc., sec. 1240.) Whether or not the defendant herein Cuyamaca Water Company, a copartnership, or the members thereof, or either or any of them, have ever been or now are entitled to claim and be accorded the benefit and application of the foregoing statutory provision in respect to the appropriation and uses which during past years have been by them or either or any of them made of the waters of the San Diego River, or of lands along its course, depends upon an involved condition of mingled law and fact, fully exploited during the long trial of the cause before the court and the jury. We do not deem it necessary upon the record as presented in these appeals to determine the primary legal problem thus presented and thus insistently urged by the appellants herein, which is as to the right, under the foregoing amendment to the statutory law of eminent domain, possessed by a purely private owner of water, whether static or flowing in a stream, and of the land upon which it stands, as in a

reservoir or over or through which it flows, as in a stream to resist condemnation proceedings undertaken by a municipality or other public body having for their purpose the acquisition and application of such lands or waters for public use, based solely upon the ground that the aforesaid lands or waters or both have by such private owner been devoted to another public use. We are of the opinion that upon both the facts of this case as developed by the evidence and found by the trial court the foregoing problem is not herein presented for our solution. The facts of this case as thus shown by the evidence may be briefly stated as follows: In about the year 1914 the City of San Diego entered definitely upon the project of creating a vast reservoir and sufficient dam for the impounding of the waters of the San Diego River, both normal and torrential, at and above a gorge along the course of said river and being about twenty miles above said city, through the comparatively narrow confines of which the water of the river makes its exit after passing over the lands of El Capitan Grande Indian Reservation. It accordingly in that year made application to Congress for an appropriate grant of about 1100 acres of the lands of said reservation for use as a municipal reservoir. After prolonged hearings upon such application, which was staunchly, not to say passionately, resisted, by and on behalf of the Cuyamaca Water Company through its most active and aggressive member, Mr. Fletcher, and also by and on behalf of the interveners herein, the United States government finally determined to make said grant, and through its act of Congress authorized the City of San Diego to acquire such lands, amounting to about 1700 acres, by a condemnation proceeding against the Indians of such reservation, which proceeding being instituted in accordance with the terms of said act resulted in the acquisition by said city of the aforesaid acreage of land within said reservation for the purposes of creating thereon such reservoir. In the meantime the city acquired by purchase from private owners certain other and adjacent lands of such extent and location that shortly before the date of the institution of the present action it had become the owner of all the lands both above and within said gorge necessary to render feasible its proposed creation of said reservoir and dam, excepting only that body of land lying within and about said gorge which

was owned by the Cuyamaca Water Company or by Mr. Fletcher, the active and only surviving member of said firm. This body of land, composing several hundred acres, had been acquired by Mr. Fletcher or his company in the year 1914, about the time when the activities of the City of San Diego for the eventual creation of El Capitan reservoir and dam site had their inception. The land in question does not occupy the entire width of the gorge, nor does it completely contain the stream bed of the San Diego River. The consequence of this situation was that neither the City of San Diego nor the Cuyamaca Water Company could construct a dam across said gorge adequate to impound the down flow of said river at that point without the concurrence of the other, or without the exercise of the right of eminent domain on the part of said city over the said lands and properties of the defendant company or of Mr. Fletcher, if it should appear that he was the individual owner of said tract of land. In the meantime the Cuyamaca Water Company had been making several if not separate uses of said land, the first of which was that in about the year 1914 it had caused the erection of a pumping plant in the bed of said river and upon its said lands and for a time had extracted a considerable amount of water from the stream, which it had poured into its ditches for the supply of its lower consumers, among which were numbered several municipalities and water-using districts, and among the latter the interveners herein. About nine years prior to the commencement of the present action, however, a torrential down flow of the river had destroyed said pumping plant and the same has never been rebuilt, nor have the waters flowing through that portion of the bed of the river been, since the destruction of said plant, extracted or appropriated or applied to the uses of the Cuyamaca Water Company or of its public or private customers occupying lower areas. The second uses which the Cuyamaca Water Company has been making of said tract of land since its acquisition, and is still making of such portion thereof as is required for such uses, is that of conveying across it by means of ditches the waters of the San Diego River and its tributaries which said company has been appropriating and claiming the right to appropriate for a goodly number of years, and in the extraction and impounding of which it has expended large sums of money in a dis-

tribution system by means of which it brings such of these waters as it has extracted and impounded from distances many miles up said river down to the gorge, in a portion of which the lands involved in this action are located, and thence across said lands to lower levels in the course of its ministry to the municipalities, water districts and individual users of water who are its customers therein. When the present action was instituted the plaintiff herein did not in its original complaint take any note or make any provision looking to the continued utilization of said tract of land for the aforesaid purposes; but in its amended complaint herein the plaintiff undertook to set forth affirmatively and in detail the particular use which the original defendants herein were making of the portion of said land occupied by its ditches and other appliances for the conveyance of said upper waters across said land, and in so doing so far modified its demand for the condemnation of said land for its own public uses as to concede and in fact establish in the said defendants the full right and easement in and to the use of the portion of said tract then being occupied and utilized for the foregoing purposes, the same to be and to remain unaffected by the construction and use of the proposed dam to be placed across said gorge, in the event of such condemnation. It is important to take note of the plaintiff's precise averments in that regard. They read as follows:

"Reserving to the defendants and to their successors in interest the easement and right:

"(1) To conduct over and across said land hereinabove described by means of the flume or conduit now located thereon, which said flume or conduit is located on that particular portion of said land more particularly described as follows: A strip of land twenty (20) feet wide, being ten (10) feet on each side of the following described center line to-wit: [Describing it] any water which said defendants, or either or any of them may now or hereafter be entitled to carry or conduct across said land, together with the right to enlarge and repair said flume or conduit, or to relocate the same in a manner not inconsistent with the use of said lands by plaintiff for reservoir purposes. . . .

"(5) Further reserving to said defendants and to each of said defendants, and their successors in interest, the right

of access to said property for all purposes hereinabove stated as reserved to said defendants and to each and every of said defendants."

The evidence introduced upon the trial of the action was such as to fully support the aforesaid averments in the plaintiff's amendment to its complaint and also to fully justify the findings of the trial court precisely defining the aforesaid uses which the defendants have been and are making of that portion of the tract of land to be considered, and not only establishing the same but also declaring that the taking of said land, subject to such uses and the erection of the proposed dam thereon and upon the lands which are already owned by the plaintiff, will not interfere with nor be in anywise inconsistent with the continuance of such easements and uses. As to the claim of the defendants to the effect that by the construction of the pumping plant already noted in the bed of said river and the extraction thereby of certain quantities of water from the river at said point for allocation to the uses of its lower customers, the trial court made a finding to the effect that the defendants had lost whatever right they might otherwise have gained through the destruction of said plant by torrential floods and by the abandonment of such use for the period of nine years following such destruction and immediately preceding the date of the institution of the present action. But even if in this respect the trial court could be held to have been in error, it would seem that whatever remaining rights the defendants may still retain in the matter of the re-establishment of said pumping plant, and in the use thereof, these have been fully protected and reserved to them, and hence also to the interveners herein by the further concessions found in the plaintiff's amended complaint, and wherein the defendants are to retain "the right to withdraw and take from said lands by pumps or otherwise any water which the defendants, or either or any of them, now have the right to withdraw and take from said land." With respect to whatever rights the defendants may have acquired in the waters of the San Diego River by virtue of the diversion thereof at the point where said original pumping plant was located and by the supply thereof from that source to their municipal and other customers below said point of diversion, and whatever rights

they may still retain therein, and whatever basis the possession of such rights and the use of the lands in question for their exercise might furnish for the claim of the defendants and interveners herein for their present claim that the plaintiff is forbidden to condemn said lands under the aforementioned amendment to the eminent domain provisions of the Code of Civil Procedure, will be reserved for discussion at a later stage in the present opinion.

We are thus, as to the facts of this case, brought to the point of considering whether the plaintiff herein, as a municipal corporation, is in either fact or law forbidden to institute and maintain this action for the condemnation for its public uses of the lands sought herein to be condemned by virtue of the provision of said amendment to the Code of Civil Procedure. The particular lands and the particular portion thereof and the particular rights and uses therein which the plaintiff seeks to acquire by the instant proceeding in eminent domain bear no such relation, under the facts as found by the trial court, to those other lands and properties of the defendants, including water rights they may possess, or claim or be exercising therein and in relation to any public or private consumers, as to entitle these defendants to successfully maintain that the lands and properties herein sought to be taken have been or are being ''appropriated to the use of any . . . incorporated city or town or municipal water district'' so as to be exempted from the exercise of the right of eminent domain over such lands by the plaintiff herein, a municipal corporation, in its effort to so acquire the same for public use. The tract of land embracing about 200 acres, of which the larger portion is sought to be taken, and the remainder of which is sterile, unused and of little value, is separate and remote from any other lands of these defendants, the main holdings of which lie many miles further up the river and are directly utilized in the appropriation, diversion, storage and distribution of those waters of the river and its tributaries which these defendants are engaged in transporting and disposing of to its consumers by means of the ditches and appliances above referred to, the only connection by way of either contact or use between these entirely separate land holdings being the long line of said ditch. The only other lands having any proximity to the tract in controversy consists of a body of land lying

about five miles down the river, occupied by the El Monte pumping plant, and to which the relation of the defendants herein is that of a riparian owner. This latter tract bears no other relation to the lands to be taken than that the waters of the river which escape from the defendants' upstream appropriations and reach and pass through El Capitan dam site flow down to the El Monte location in the natural down flow of the river. It would seem to be sufficiently obvious that as to the defendants' ditch and appliances across the lands here sought to be taken and as to the waters which flow therein in the course of their distribution to public and private consumers thereof upon the lower levels between these lands and the City of San Diego, neither these defendants nor the said users of said waters can have or claim any right to rely upon the inhibitive provisions of the Code of Civil Procedure above quoted for the purpose of defeating the present action, since as to each and all of them the taking of the portion of said tract of land herein sought to be condemned, and under the conditions allowing such condemnation, will not in the slightest degree affect or interfere with or in anywise diminish the full use of said waters and of the ditch or ditches by which they are and are to be delivered to such use or in any way involve or call in question the asserted right of these defendants or of their public or private consumers or of the interveners herein to the ownership and use of said waters flowing and to flow in said ditch or any part or portion thereof. In the utter absence of any showing herein that said lands, if so condemned, will be put to uses inconsistent with or injuriously affecting the use and right to use the said ditch and the waters flowing therein as to their ownership, distribution or use, there can exist no possible ground for the application of the aforesaid provisions of the Code of Civil Procedure to the proposed condemnation of the land in question in so far as the rights of these defendants and their consumers or the interveners herein to the use of said ditch and of the waters flowing and to flow therein are concerned.

From the foregoing conclusion we pass to a consideration of whatever rights these defendants and these interveners, or either or any of them, claim to possess by reason of whatever uses have in the past been made or are

now being made of the waters of the San Diego River which reach and pass over, through or under the particular lands herein sought to be taken. These waters, as we have seen, are in no way connected with the waters which arrive at and pass over said lands through said ditch, but, on the contrary, are waters which escaping appropriation on higher levels flow down the river to the point of their proposed collection and impounding by means of the El Capitan reservoir, to be created by the proposed dam. Assuming for the sake of argument that the question of the defendants' right to resume the extraction and use of these waters as they flow through said gorge by means of pumps or other devices has not been set at rest by the findings of the trial court relative to their abandonment of such use, or even by the concession of the plaintiff that whatever right these defendants may have to resume such use they may still exercise, notwithstanding the taking and subjection of said lands to dam site uses, there would still remain the question as to what rights, if any, these defendants or their consumers or successors have or could have in these particular waters which are so far superior to the rights of this plaintiff therein as to operate to prevent the condemnation of these lands in order to the utilization of the waters of the San Diego River flowing therein for municipal purposes by the City of San Diego. As to these particular waters it will be seen that the rights of these defendants, if any, are riparian and are derived solely from their ownership of the land through which they flow. In the case of *City of Los Angeles* v. *Pomeroy,* 124 Cal. 597 [57 Pac. 585] et seq., it was held by this court that the City of Los Angeles, by virtue of its successorship to the rights and properties of the pueblo of Los Angeles, had a prior and paramount right to such of the waters of the Los Angeles River as the expanding needs of such city required, and that the defendants in that action as riparian owners along the upper course of said stream could not assert their subordinated riparian rights in and to said waters so as to defeat the right of said city to condemn their lands in order to accomplish the subjection of said waters to the public needs and uses of said city. In the case of *City of San Diego* v. *Cuyamaca Water Co. et al.* (numbered L. A. 10171), *ante,* p. 105 [287 Pac. 475], this day decided, this court has given full application of the

doctrine announced in that case in so far as it related to the prior and paramount right of a city, deriving its origin from a pueblo, to the waters of a stream flowing through it, according to its growing needs. ■ It follows from the law, as thus declared, that the City of San Diego, as plaintiff herein, as the successor of the pueblo of San Diego, has had at all times and still has a prior and paramount right to the use of the waters of the San Diego River particularly involved in the present discussion whenever, and to the extent that, the needs of the city and its inhabitants require such use. In the instant proceeding the City of San Diego, by the formal resolution of its governing body, declared that the necessity had arrived for the impounding and use of these particular waters through the acquisition of El Capitan reservoir and the condemnation of the lands herein sought for the construction of a retaining dam. The findings of the trial court herein as to the facts support said resolution and reassert the present needs of the city for such waters and for the condemnation of said lands in order to the exercise of the prior and paramount rights of the city to the present use of said waters. In view of the law, as heretofore declared, and again and most recently reasserted, and of the facts as thus found to exist by the trial court, it is impossible to conceive how these defendants, or their successors, or even their consumers, possessing and exercising only a subordinated right to the use of these particular waters, could either possess or under the aforesaid amendment to the Code of Civil Procedure be accorded the right to prevent the plaintiff, in the exercise of its superior right to the use of these waters, from also exercising the right of eminent domain over these lands forming, as they do, a portion of the watercourse through which these waters flow in order to render available to said city its aforesaid superior right to the use of said waters, according to its needs. The foregoing reasoning and conclusions are also susceptible of full application to whatever rights and claims these defendants and their successors assert to that portion of the waters of the San Diego River which, having passed through the gorge wherein lie the lands sought to be taken, flow downward some five miles or so to those lower lands of these parties, upon which is located El Monte pumping

plant, the purpose of which is to extract said waters. As to these waters, also, the rights of the defendants and their successors in ownership and use are riparian only, and hence are subject to the same conditions as those already defined affecting these same waters at the proposed dam site. ■

It is obvious that the amended sections of the Code of Civil Procedure were never intended to have application to such a situation as is thus in both instances presented, but that even if given the fullest effect of which the language of said amendment is susceptible could only have been designed to prevent one municipality or water district from seeking to acquire by condemnation and apply to new and other public uses the property of another municipality or water district which had already been appropriated and was being actually put by the latter to a public use, which in point of right was equal or prior to that of the municipality or water district seeking such condemnation. The case of *Mono Power Co.* v. *City of Los Angeles*, 284 Fed. 784, upon which the defendants and particularly the interveners herein, most strongly rely, is a case to which the foregoing statement as to the proper interpretation of the said amendments to sections 1240 and 1241 of the Code of Civil Procedure has precise application. That was a case wherein the plaintiffs in the court below, city of Los Angeles et al., were seeking to condemn certain land, water rights and rights-of-way, of which the Southern Sierras Power Company et al., were the owners, and which lands, water rights and rights of way were at the time of the institution of said action in the actual use by said defendants of supplying electric energy to certain incorporated cities and towns in the counties of Mono, Inyo, Kern, San Bernardino, Riverside and Imperial for public or municipal uses. The court in that case held that the city of Los Angeles, in order to install and enter upon a municipal use of its own, was not entitled to condemn and apply to such public use on its own account properties which had already been wholly appropriated to the public use of some other county, municipality, incorporated city and town, and the inhabitants thereof. This, however, is, as we have seen, not such a case, but, on the contrary, is a case to which, under our interpretation of the scope and intent of the aforesaid amendments to the Code of Civil Procedure, that case has no application.

We have thus, we think, disposed of every vital question presented upon the appeal from that portion of the judgment herein from which the appellants have prosecuted a separate appeal. We now address ourselves to their appeal from the order of the trial court granting a new trial, as to the issues which were submitted to a jury, and as to which the jury returned a verdict in the defendants' favor, fixing their damages by virtue of the taking of the property involved in this condemnation, in round numbers at the sum of $600,000. The trial court set aside this verdict as excessive, and in upholding its order in that regard we cannot do so more aptly than by adopting the language of the District Court of Appeal in and for the Second Appellate District, Division One, to which these appeals were in the first instance presented, and which court in affirming said order did so in the following appropriate words:

"The trial court held, in effect, that the evidence was insufficient to justify the verdict; and more particularly that the verdict was so excessive that it appeared to have been given under the influence of passion and prejudice. ██ Insufficiency of the evidence, before it will justify a court of appeal in refusing to accept and follow a finding of fact, must amount to a complete absence of any substantial evidence in support of the finding. A common statement of the rule on appeal is that if the evidence is conflicting, the finding will not be disturbed. But it is not so with a trial court in passing upon a motion for a new trial. The trial judge should not grant a new trial unless he is clearly satisfied that the verdict or other decision is wrong. 'But in considering the question upon the motion he must act upon his own judgment as to the effect of the evidence. The parties are entitled to the judgment of the jury in rendering a verdict, in the first instance; but upon a motion for a new trial they are equally entitled to the independent judgment of the judge as to whether such verdict is supported by the evidence.' (*Green* v. *Soule,* 145 Cal. 96, 103 [78 Pac. 337, 340].) In the case at bar there was a wide diversity of opinion of witnesses concerning the value of the land sought to be taken. The value stated in the verdict, though less than that shown by the testimony of some witnesses, is many times the value given by other witnesses. Counsel for defendants were deeply dissatisfied with the an-

nouncement of the intention of the court to decide that the right to condemn the land had been established. To such decision they had the right of exception, and the right to have the matter reviewed upon appeal, but upon that issue they had no right of appeal to the jury. Nevertheless, on numerous occasions, and apparently with a studied intention, they expressed this dissatisfaction in the presence of the jury, and endeavored to emphasize and impress upon the minds of the jurors the fact that the land was being taken away from the defendants against the will and contrary to the desire of the defendants. If this overpressed insistence of the defendants that the court was erroneously permitting their land to be taken away from them caused the jury to increase the amount of the compensation award and to raise it above the value which normally would have resulted from the testimony of the witnesses, this easily might have produced an excessive verdict. For the standard of measurement of value of the land about to be taken did not in any way depend upon the fact that the defendants were objecting to the condemnation. ■ The plaintiff was entitled to have the actual market value established in accordance with law, unaffected by any belief or suggestion that the property was being wrongfully condemned and taken. It is apparent that the court in ruling on the motion for a new trial had reached the conclusion that the jurors, in arriving at the amount of compensation given by their verdict, had improperly allowed themselves to be influenced by these contentions of the defendants, and that the verdict so obtained was excessive. We are of the opinion that the order granting a new trial of the issues tried by jury should be affirmed.''

In the determination of these appeals we have given careful consideration to the very elaborate briefs and arguments of counsel for the respective parties and of *amici curiae,* and to the many points made and authorities cited therein, and such of these as have not been noted or commented upon in detail in this opinion are, we think, fully covered and disposed of by our discussion herein of the vital points involved in these appeals.

It is ordered that the portion of the judgment appealed from be and the same is hereby affirmed, and that the order

of the trial court granting a new trial as to the issues which were committed to the jury is also hereby affirmed.

Shenk, J., Waste, C. J., Langdon, J., Seawell, J., Curtis, J., and Preston, J., concurred.

Rehearing denied.

All the Justices present concurred.