[Civ. No. 8600.   Fourth Dist., Div. One.   May 8, 1969.]

CITY OF SAN DIEGO, Plaintiff and Respondent, v. PAUL E. SLOANE, Defendant and Appellant.

Paul E. Sloane, in pro. per., Harrison G. Sloane and Cullen W. Coates for Defendant and Appellant.

Edward T. Butler, City Attorney, and James P. McGowan, Jr., Deputy City Attorney, for Plaintiff and Respondent.

AULT, J. pro tem.*—The City of San Diego initiated this action in eminent domain to acquire title to 8.56 acres of land which lie in and south of the San Diego River bed in the Mission Gorge region of San Diego County. The 8.56 acres, sought to be condemned, are a part of a larger parcel of land consisting of approximately 83 acres belonging to the same owners. A portion of the land to be taken (4.75 acres) lies in the southerly half of the riverbed, extending approximately 1,900 feet along the course of the river at an average width of 132 feet. The City of San Diego owns the northerly half of the riverbed, and the common line dividing the two properties near the center of the river is also the city limit of the City of San Diego. Crossing the riverbed, half on land already owned by the City and half on the land sought to be taken, is the old Padre Mission Dam. This dam was built in the early 1800's and is now an historical landmark. It stands approximately 7 feet above the riverbed and is 106 feet in length. Throughout the year, at least some water flows over a breach near the top of the dam. At times, a significant volume of water flows over the dam, down the river, and on into the sea some 15 miles away.

All of defendants' land, that is, the entire 83 acres, is within the watershed of the San Diego River. Prior to the taking of the 8.56 acres, all of defendants' land was riparian to the river. The effect of the taking of the 8.56 acres is to separate the remaining portion of defendants' land from the river so that it is no longer riparian land (*Hudson* v. *Dailey,* 156 Cal. 617, 624 [105 P. 748]).

After trial in the superior court, a jury found the market value of the land taken to be $10,000, and further found that there was no severance damage to the remaining portion of the defendants' land. This verdict was incorporated into findings of fact, conclusions of law, judgment and final order of condemnation, all of which were signed by the trial court. Paul E. Sloane, one of the owners of the land, appeals from the entire judgment.

The main issue presented on appeal centers upon defendants' water rights as owners of land riparian to the San Diego River, and how these rights are to be treated in a condemnation action brought by the City of San Diego. Throughout the trial of this case, the City was successful in preventing defendants from introducing any evidence concerning the water rights riparian to their land. At the City's urging no

*Assigned by the Chairman of the Judicial Council.

testimony was allowed as to what effect these rights might have on the market value of the land taken, and all instructions submitted by the defendants with respect to such rights were rejected and not given. Similarly, on the question of severance damage, neither the jury nor any witness was permitted to consider that the effect of the condemnation was to separate defendants' remaining land from the river, extinguishing any riparian rights that had theretofore existed in that land. The City consistently takes this same position on appeal, stating in its brief, ''. . . the trial court properly excluded all evidence proffered by appellant relating to his so-called secondary rights to the river waters, which purported rights are non-existent in this case since the City of San Diego appropriated all the land and waters in question for its municipal purpose.''

The City bases its position that defendants' ''so-called secondary rights'' are non-existent on two cases, bearing the same titles, decided by the California Supreme Court on the same day: *City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 105 [287 P. 475]; and *City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 152 [287 P. 496]. We believe the City's reliance on these two cases to establish the proposition of law urged in the trial court and now on appeal is misplaced.

The first *Cuyamaca* case was brought by the City of San Diego to establish its prior and paramount right to the waters of the San Diego River as the successor to all the right in those waters possessed by the Pueblo of San Diego under Spanish and Mexican law. The action was declaratory only. The defendants in that action were owners of land riparian to the San Diego River in the area where the City's El Capitan Dam now stands. After a lengthy trial, a final judgment was entered and an appeal was taken to the Supreme Court. That court basically approved the trial court's findings, but modified the judgment to read in pertinent part:

''It is adjudged, ordered and decreed that the plaintiff the City of San Diego was at the time of the commencement of this action and now is the owner in fee simple of the prior and paramount right to the use of all the water (surface and underground), of the San Diego River, including its tributaries. from its source to its mouth, for the use of said the City of San Diego and of its inhabitants, for all purposes, and that said defendants, and each of said defendants, said cross-complainants, and each of said cross-complainants, and said

interveners, and each of said interveners, have not, and no one or more of them have any estate, right, title or interest in or to said waters, or any part thereof, or in or to the use of the same, or any right to take or use said waters, or any part thereof, save in subordination and subject to said prior and paramount right of the plaintiff, the City of San Diego, and that the plaintiff is entitled to no other or further relief herein than that afforded by the remedy of the declaratory judgment above set forth.'' (*City of San Diego* v. *Cuyamaca Water Co.,* 209 Cal. 105, 151 [287 P. 475].)

The effect of the first *Cuyamaca* case is to establish as law the prior and paramount right of the City of San Diego to the surface and underground waters of the San Diego River. But the right of riparian owners is not extinguished. While their right is subordinate and subject to the City's prior and paramount right, they may use the waters of the river not needed or used by the City. (*City of Los Angeles* v. *City of Glendale,* 23 Cal.2d 68, 75, 79 [142 P.2d 289].) Appellant in this action concedes the prior and paramount right of the City, but maintains that his land had subordinate rights which enhanced the value and which should have been given consideration in the condemnation action.

The second *Cuyamaca* case again involved the City of San Diego and owners of land riparian to the San Diego River. In that case, the City of San Diego sought to condemn 200 acres of land for the purpose of building El Capitan Reservoir so that it could assert and use for the benefit and need of the City of San Diego and its inhabitants the waters of the San Diego River to which the earlier *Cuyamaca* case had adjudicated its prior and paramount right. It is of some importance, we think, that this condemnation action was instituted pursuant to a formal resolution of the governing body of the City declaring the need and necessity of the City to the waters involved and to the land sought to be condemned for the purpose of constructing a retaining dam. (*City of San Diego* v. *Cuyamaca Water Co., supra,* 209 Cal. 152, 165.) In that action, the trial court specifically found that the need of the City of San Diego for such water existed and that the condemnation of the land was necessary so that the City could exercise its prior and paramount right to the use of the waters involved. (*City of San Diego* v. *Cuyamaca Water Co., supra,* 209 Cal. 152, 165.)

In the second *Cuyamaca* case, the owners of the land sought to be taken vigorously opposed the City of San Diego's right to condemn their lands. Insofar as is pertinent to the instant

case, that was the only controversy presented to the Supreme Court on appeal and it was disposed of by the court in these words: ''In view of the law, as heretofore declared, and again and most recently reasserted, and of the facts as thus found to exist by the trial court, it is impossible to conceive how these defendants, or their successors, or even their consumers, possessing and exercising only a subordinated right to the use of these particular waters, could either possess or under the aforesaid amendment to the Code of Civil Procedure be accorded the right to prevent the plaintiff, in the exercise of its superior right to the use of these waters, from also exercising the right of eminent domain over these lands forming, as they do, a portion of the watercourse through which these waters flow in order to render available to said city its aforesaid superior right to the use of said waters, according to its needs.'' (*City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 152, 165 [287 P. 496].)

The holding of the second *Cuyamaca* case is that the owners of land riparian to the San Diego River, possessed as they are of a subordinate right to the waters thereof, cannot assert that right to prevent the City of San Diego from condemning their land for the purpose of making available to the City the water which it needs, and to which it has the prior and paramount right. But the case does not hold, as the City here asserts, that the riparian defendants' subordinate and secondary water rights are extinguished and rendered non-existent by reason of the action taken by the City or that these rights need not be considered as affecting the value of the lands sought to be condemned. That subject was not considered by the court in its decision and we find nothing in the case which supports the position asserted by the City in this action.

In the present case the land involved was not condemned to be used to provide water for the City of San Diego. This action was initiated by the City of San Diego pursuant to a resolution passed by its City Council *declaring a public need and necessity to acquire the land for the purpose of a public park.* No representation is made by that resolution, nor did the City produce any evidence at the trial, to indicate it was the intention and purpose of the City to use the land to be taken to acquire and put to use all the waters that flow over and through it for the benefit of the inhabitants of the City of San Diego. As to any proposed use of the water, the record is wholly and completely silent, and we find nothing therein to indicate that when this park is completed, the waters of the San

Diego River, both surface and subsurface, will not continue to flow, as they have for centuries, over and through these lands, down the river, across the lands of others and out into the sea.[1]

Indeed, the City's position is that by the mere act of condemning the land for a public park and by permitting the waters of the river to continue to flow over and through the land, it has effectively asserted its prior and paramount pueblo right to all such waters, and has, *as a matter of law,* extinguished and rendered nonexistent the subordinate and secondary rights of the riparian owners so that the same may not be considered as affecting the value of land in the condemnation action.

In so permitting the water of the San Diego River to continue to flow over and through its park land, or even by using some of that water upon the park property, the City of San Diego will not be exercising its paramount pueblo right to *all* the water of the river. The City has the power to exercise its prior and paramount right in full or in part, but it is the extent to which it exercises that right by use, not the fact of its existence, which affects the subordinate right of riparian owners. (*City of Los Angeles* v. *City of Glendale, supra,* 23 Cal.2d 68, 79.) Because of its paramount right, the City may take and use the water of the river by the barrel or by the drop, but if it takes and uses only the drop, it cannot play dog in the manger with the water remaining in the barrel. So far as the record in this case reveals, the use to which the City of San Diego proposes to put the water of the river is a use wholly consistent with the riparian ownership it will acquire by and through its condemnation of defendants' land. It is apparent that such use will have little or no tendency to diminish or devaluate the subordinate rights of riparian owners either upstream or downstream from the point involved. Since the action taken by the City will have the singular effect of extinguishing the subordinate rights of the defendant riparian owners *only,* it is likewise apparent that the loss of these rights, both as to the land taken and as to the larger parcel which defendants will retain, stems from the condem-

---

[1]Elsewhere in the City's brief it is suggested that the City may impound water and use it on the park site. While this is a matter to be supplied by proof and not by argument, even in the latter context, it is not suggested that any use will be made of the water not wholly consistent with riparian ownership. Certainly, in the absence of proof, it may not be assumed that the City will remove, replace or greatly alter the Old Padre Dam which now ponds water in the area and which is the obvious reason the City has selected the property for a public park.

nation of the land and not from the City's exercise of its paramount water right.

The proper treatment of a city's paramount pueblo water right and the subordinate right of a riparian land owner, as the same affect value in a condemnation action, has heretofore been considered and decided by the Supreme Court of this state. In *City of Los Angeles* v. *Pomeroy,* 124 Cal. 597 [57 P. 585], the factual situation precisely paralleled that which existed in the second *Cuyamaca* case. In that case, pursuant to an ordinance passed by the city council, the City of Los Angeles, possessed of a prior and paramount right to the water of the Los Angeles River by reason of its successorship to the Pueblo of Los Angeles, sought to condemn 315 acres of land on the river for the purpose of using the land to contain and divert the water of the river so that it could be used by the City of Los Angeles.

In the *City of Los Angeles* v. *Pomeroy, supra,* 124 Cal. 597, in contradistinction to the second *Cuyamaca* case, the appeal before the Supreme Court was in a context which required the court to review the entire proceedings before the trial court. A careful reading of the case reveals the procedure followed in that trial, and approved by the Supreme Court, was wholly different from that urged by the City and followed by the trial court in this case. There, the trial court, in its instructions to the jury, which had before it only the questions of value and damages, defined in detail the paramount right of the City of Los Angeles to the waters of the Los Angeles River, further defined the remaining and subordinate rights of the riparian owners to both the surface and subsurface waters of that river and then instructed the jury: "Whatever additional market value the land may have had by reason of these rights and advantages, so far as they do not interfere with or impair the rights of the city . . . , this value the defendants are entitled to as a part of the value of the land, before it can be taken; and this value you must include in your estimate of the value of the land sought to be condemned." (At p. 622.)

We gather from *City of Los Angeles* v. *Pomeroy, supra,* 124 Cal. 597, that in a condemnation action such as this the extent to which the city's paramount and prior right to the waters here involved may tend to diminish defendants' subordinate right, and the extent to which defendants' subordinate right so diminished may enhance the value of the land to be taken are questions of fact to be considered by the jury in arriving

at value, pursuant to evidence properly received and under instructions as to the law by the court. The question of severance damage should receive like treatment.

The extent to which the City's paramount right to take and use the water of the river will affect the market value of riparian land will depend upon many factors and variables upon which proof must be brought to bear. And while different factual situations may affect upward or downward the degree to which the City's prior and paramount right to the water of the river diminishes the riparian owner's subordinate right thereto, the inter-relationship between the two rights is such that the former cannot extinguish the latter as a matter of law. The pueblo right attaches only to such water as the City needs and uses at a given time.

"The amount needed is necessarily uncertain and conjectural and dependent upon conditions such as rainfall and other established sources of supply." (*Cuyamaca Water Co.* v. *Superior Court,* 193 Cal. 584, 588 [226 P. 604, 33 A.L.R. 1316].) During the time the City is not using all the waters of the river, riparian owners may use them for the use and benefit of their lands. (*City of Los Angeles* v. *Pomeroy, supra,* 124 Cal. 597, 620; *City of Los Angeles* v. *City of Glendale, supra,* 23 Cal.2d 68, 79.)

In the trial of such an action as this, the testimony of witnesses as to the facts and circumstances which affect the application of these conflicting water rights is not only permissible but essential to a proper evaluation by the jury. Expert witnesses, who understand these rights, and who believe they affect value and damage, may say so, and explain the reasons for their opinions. Certainly, the trial court must instruct the jury concerning these conflicting water rights so that it may evaluate the evidence, arrive at value, and give proper consideration to severance damage. (*City of Los Angeles* v. *Pomeroy, supra,* 124 Cal. 597, 615.)

As heretofore indicated, none of these procedures were permitted or followed in the trial of this case. For that reason the judgment must be reversed. This holding makes unnecessary discussion of other points raised by appellant. We have no reason to suppose error will occur in connection with any of them in the retrial of this case.

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.